SMITH, Justice,
for the Court:
Curtis Curry was indicted by the Grand Jury of Coahoma County for possession with intent to sell and for the sale of cocaine to an undercover police officer. A jury trial began on January 18, 1991, in the Coahoma County Circuit Court. After testimony by two State witnesses, the court ruled that the charge of possession with intent to sell would be dismissed. The jury returned a guilty verdict on the remaining charge. Curry was subsequently sentenced to serve a term of six (6) years under the supervision of the Mississippi Department of Corrections and to pay a fine of three thousand dollars. Curry’s Motion for a Judgment Notwithstanding the Verdict or, in the alternative, for a New Trial, was denied.
Feeling aggrieved, Curry presents two issues for this Court’s consideration on appeal:
I. WHETHER THE CIRCUIT COURT ERRED BY FAILING AND REFUSING TO SUPPRESS THE MONEY SEIZED FROM THE PERSON OF THE DEFENDANT WHEN STOPPED AT A TRAFFIC LIGHT AND ALLOWING SAME TO BE INTRODUCED INTO EVIDENCE IN THE TRIAL AFTER HAVING RULED THE SEARCH WAS ILLEGAL AND THE DISMISSED [SIC] A COMPANION ACTION, WHEREIN THE DEFENDANT WAS CHARGED WITH POSSESSION WITH INTENT TO SELL, TRANSFER OR DISTRIBUTE COCAINE.
II. WHETHER THE CIRCUIT COURT ERRED BY REFUSING TO GRANT APPELLANT’S MOTION FOR A MISTRIAL ON THE BASIS THAT THE JURY HEARD TESTIMONY REGARDING THE SEIZURE OF EVIDENCE DURING AN ILLEGAL SEARCH.

THE FACTS

Curry was initially indicted for both possession of cocaine with intent to sell and the sale of cocaine. Prior to trial, Curry filed a motion to suppress any evidence seized from his automobile and any statements he made following his arrest, asserting that both the search of his vehicle and his arrest were without probable cause. In chambers prior to the beginning of the trial, counsel for Curry noted the motion to suppress had not yet been heard, but indicated no opposition to having the court consider it during the course of the proceedings.
Officer Randy Gibson testified he was a narcotics investigator with the Clarksdale Police Department in November of 1990, when an undercover operation was in effect. Two officers from Greenville, Mississippi, Herbert Partlow and Kenny Trader, were brought in. Officer Gibson explained the method by which these and other officers wearing body microphones purchased drugs from individual sellers around the town of Clarksdale. Officer Gibson stated the officers purchased the drugs with money from a special account. The bills had préviously been photocopied in order that the serial numbers could later be matched with the money seized from persons arrested for drug sales.
Officer Gibson testified he obtained a sum of marked money On November 15 and drug purchases were made on November 15, 16, and 17. On the latter date, Gibson stated the officers had been focusing their efforts in the area of Issaquena Street and Sixteenth Street in Clarksdale. Several officers were inside a house belonging to an informant, James Liner, organizing evidence and tapes when they observed Curtis Curry coming down the street at 2:42 p.m. Officer Gibson stated when Curry drove up, Officers Part-low and Trader and James Liner went outside with some money, while he, Gibson, remained inside and began filming with a video camera. Gibson identified a videotape recording as the one he had made of the officers and Curry.
Officer Gibson testified he gave Officer Partlow two twenty dollar bills and one ten dollar bill, and when the officers came back inside, they returned to him a white napkin with “two yellowish-looking rocks in it with a name on the outside of it and a phone number.” Gibson identified a sealed bag kept at the Mississippi Crime Lab as being the one containing the same “rocks” and napkin, in *808 scribed with the name “Groover” and a phone number. Gibson testified the phone number was determined to belong to Curtis Curry, also known on the streets as “Gro-over,” and whose car tag read “Gruver.”
Following the incident, Officer Gibson and Officer Bill Gardner attempted to locate Curry and later spotted his car outside a laundromat. After temporarily losing track of Curry, the officers again saw Curry’s car, and followed it, first to his residence and “down to Second Street where he ran a red light” and was pulled over. Officer Gibson stated he asked Curry for permission to search the car while Officer Gardner gathered information for a traffic ticket. According to Gibson, Curry replied, “Sure.” Upon searching the passenger side of the vehicle, Gibson stated that Curry volunteered, “I don’t have any drugs in my ear,” although no one had mentioned drugs to him. In the console Gibson testified that he located a Crown Royal bag. At this point in Gibson’s testimony, the defense objected based on upon their motion to suppress. The jury was excused..
Outside the jury’s presence, Officer Gibson continued stating that inside the Crown Royal bag was a medicine bottle with Curry’s name, and inside the bottle were three bags of white powder and a “bunch of yellowish-looking rocks.” Officer Gibson admitted he had been following Curry with the intent to eventually stop him at some point. With the jury still out, Officer Gardner testified, corroborating Officer Gibson’s testimony. Gardner stated after the drugs were found Curry was arrested and transported to the police station, where Gardner wrote and issued Curry the traffic citation. Gardner admitted he had a tape recorder in his pocket when Curry was pulled over but did not turn it on.
The lower court ruled the evidence relating to the search of Curry’s car and seizure of the cocaine would be suppressed. The case continued on the charge for the sale of cocaine. Officer Gibson identified two twenty dollar bills found on Curry at the time of his arrest as having serial numbers matching those of the currency Gibson had previously photocopied. Testimony by the remaining State’s witnesses was substantially similar in describing the events involving Curry and his alleged sale of two rocks of crack cocaine to the undercover officers.
Curtis Curry testified he was a thirty-nine year old high school math teacher who had never sold or used drugs. On November 16, he had returned from a basketball tournament and was at home when he heard tapping on his air conditioning unit and someone talking. He looked outside and recognized James Carl Liner, who was pulling something out of his pocket and walking down the side of Curry’s house. Curry investigated and “felt this bag” near the steps. He opened it and saw “some drug-like substance.” Curry stated he decided to call a police officer he knew, but he was not in that evening or the next morning. Thereafter, Curry decided to contact the FBI, who gave him the name of a local agent. Curry produced a phone bill listing a call to the FBI in Jackson, Mississippi, on November 17.
On the way to the laundromat Curry saw Carl Liner and approached him “about the drugs that was put under my house.” Curry had decided to go to Liner’s house with the intention of getting Liner to come to Curry’s house so the police could be called. Curry testified Liner did not want to come by, so Curry decided to “see what was up.” Curry stated he had no drugs in his car when he went to Liner’s home; the Crown Royal bag was at his home. After leaving Liner’s house, where he was introduced to Liner’s “friends,” undercover officers, Curry stated he was proceeding to either find the Sheriff or to go to the police station when he was stopped, arrested and had his money taken from him. Curry denied taking any money from the officers outside Liner’s house. He further denied writing “Groover” and a phone number on a napkin for the officers. He stated he had had his nickname since elementary school and personalized his car tag with “Gruver” because the other spelling had already been used by someone else.
Curry testified it did not appear to be him shown on the videotape of the alleged drug sale shown to the jury. He did admit going by Liner’s house. Curry testified that “based on what they [Liner and the other *809 officers] were saying, they was all in the house getting high off of ’caine. All of them.”
The jury retened a guilty verdict and Curry was later sentenced.

DISCUSSION

I. THE CIRCUIT COURT ERRED BY FAILING TO AND REFUSING TO SUPPRESS THE CURRENCY SEIZED FROM THE PERSON OF THE DEFENDANT WHILE STOPPED AT A TRAFFIC LIGHT AND ALLOWING SAME TO BE INTRODUCED INTO EVIDENCE AT THE TRIAL AFTER HAVING RULED THE SEARCH WAS ILLEGAL AND DISMISSED A COMPANION INDICTMENT OF POSSESSION WITH INTENT TO SELL, TRANSFER, OR DISTRIBUTE COCAINE.
The trial judge was troubled by the fact that the officers who followed and subsequently stopped Curry for a traffic violation had tape recorders, but did not turn them on to record Curry’s alleged permission to search his vehicle. The judge stated: “The issue is whether or not the search was lawful and I made a determination, for whatever reason, whether you agree or disagree, that it wasn’t and I’m not going to let that evidence be introduced in that particular case.” Thereafter, Curry moved to strike State’s Exhibits 3, 4 and 7, the money taken from Curry at the time of his arrest, on the basis that those exhibits were the result of an illegal search and arrest. In the alternative, the defense moved for a mistrial. After considering the motions, the judge ruled as follows:
All right, I pondered this particular issue overnight myself and it was a matter of grave concern to me in view of my suppression of the controlled substance that was found in the car. But I have concluded that the suppression of the drugs in my ruling was proper in that particular extent. However, it is the opinion of the Court that he [Curry] was under a lawful arrest for running the red light and, as far as the introduction of the bills themselves into evidence, I am going to overrule that particular motion and those exhibits 3, 4, and 7, will remain in this particular hearing.
Curry’s argument before this Court is based on his view that the search of his vehicle and his arrest were ruled illegal by the trial judge. He argues the suppression of the cocaine and the resulting dismissal of the possession charge, and the judge’s decision to allow the bills found on Curry into evidence on the sale charge, are inconsistent.
The State responds that “although the judge did dismiss the charge of possession, he did not make a finding that the search was illegal. The judge did refer to the search as illegal, but later ruled that it was a legal search incident to the arrest for a traffic violation.”
Whether the ruling of the lower court that the cocaine found in the search of Curry’s automobile would be suppressed was correct is not before this Court. The possession charge was dismissed and the matter was ended. We would note simply that “the decision of whether to admit evidence is left to a trial court’s broad discretion.” Brown v. State, 534 So.2d 1019, 1024-25 (Miss.1988).
It is solely the question of the admissibility of the currency and testimony relating thereto that Curry raises before this Court. Curry contends the currency was “fruit of the poisonous tree” and that “but for testimony about the seizure of the currency and the introduction of said currency into evidence,” there would have been insufficient proof to convict him. Obviously, there was a degree of confusion surrounding the trial judge’s determination of the legality of the search. In order to determine whether the currency seized from Curry’s person was admissible, it is necessary to determine whether there was probable cause for his arrest.
In Hamburg v. State, 248 So.2d 430 (Miss.1971), this Court reviewed the appellant’s assignment that the search of his vehicle was illegal because the police had not obtained a search warrant and had no probable cause to make any arrest. The facts were that officers received information via the police radio that a suspect had attempted to make a sale of LSD; a detailed description of the individ *810 ual and his car, particularly that the car had no license tag, was given. The officer stopped a car meeting the description, searched the occupants and found several pills on the floor of the car.
This Court, as to the search, stated:
The officer was told that the suspect had attempted to make a sale of LSD. An attempt to commit a felony is also a felony, (cite omitted). The officers saw an automobile “without a tag” meeting the description given by the informer on the police radio. We are of the opinion that the information given to the arresting officer was sufficient probable cause on which to make an arrest. The bulletin on the police radio was sufficient information to indicate probable cause for an arrest. Fuqua v. State, 246 Miss. 191, 145 So.2d 152 (1962); Shay v. State, 229 Miss. 186, 90 So.2d 209 (1956); Parks v. State, 180 Miss. 768, 178 So. 473 (1938).
The officers who arrested Curry were questioned extensively during the suppression hearing on their reasons for not obtaining a search warrant or an arrest warrant for Curry. Officer Gibson explained that to obtain a warrant “would have blown the whole [undercover] operation.” In any event, the fact that such warrants were not obtained is not dispositive. The evidence in the case at bar leaves no doubt that the officers had probable cause to arrest Curry, as Officer Gibson was the very person who had earlier in the day videotaped Curry in a drug sale transaction with other undercover officers. We find that the officer’s own, personal observation of not an attempted, but a completed sale of cocaine, a felony, was sufficiently reliable information on which to base probable cause for the warrantless arrest of Curry.
The stop for running the light was lawful and the consensual search of the bag produced evidence justifying an arrest. Officer Gibson testified that after Curry was arrested, he was then “processed,” a standard procedure in which the police go through all of the belongings of the person in custody. Officer Gibson stated in processing Curry, it was discovered that Curry had a total of $187 in his pockets. Within that sum Gibson was able to identify two (2) twenty dollar bills as ones imprinted with serial numbers matching those bills he had copied the previous day for use by the undercover officers.
This Court in Shell v. State, 554 So.2d 887 (Miss.1989), reiterated our law allowing searches of the person of one under lawful arrest:
It is a long standing rule in this, and other jurisdictions that, pursuant to a lawful arrest, law enforcement officials may seize personal effects and clothing from one who has been arrested.
In the instant case the officers took the personal possessions of the defendant after he was arrested. This search is always necessary for many reasons. Among those are: to discover weapons and means of escape; to prevent means of injury to the prisoner and others; to discover necessary medical requirements; to discover evidence in connection with the charge for which the accused was arrested.
Id. at 896. (cites omitted) (emphasis added). Accordingly, as a result of the lawful, war-rantless arrest of Curry, the subsequent search of his person was certainly permissible. We find no error in the trial court’s decision to admit into evidence the currency found as a result of that search. This assignment of error is without merit.
II. WHETHER THE CIRCUIT COURT ERRED BY REFUSING TO GRANT APPELLANT’S MOTION FOR A MISTRIAL ON THE BASIS THAT THE JURY HEARD TESTIMONY REGARDING THE SEIZURE OF EVIDENCE DURING AN ILLEGAL SEARCH.
Curry contends that testimony concerning the search of his vehicle and the seizure of currency from his pockets was “highly prejudicial and inflammatory” as a jury would “feel compelled to conclude that appellant was a drug dealer and was guilty of selling drugs to the undercover agents.” Curry apparently complains of the following portion of Officer Gibson’s testimony:
Sgt. Gardner pulled him over, asked for his license, and advised him that he had run a red light. While Sgt. Gardner was getting the information for the ticket, I asked him could I search the vehicle. He *811 said, “Sure.” I started searching and he was watching me. Sgt. Gardner was standing beside him. I did the driver’s side, walked around to the passenger’s side, and he started getting closer to me. He said, “I don’t have any drugs in my car.” Well, I hadn’t mentioned anything about drugs; hadn’t said a word. I opened up the console between the two seats and found a Crown Royal bag.
It was at this point in Officer Gibson’s testimony that- the jury was excused based on Curry’s previously filed motion to suppress. When the jury returned, Officer Gibson continued by explaining that after Curry was arrested, he was processed and at that time currency was found which Gibson could identify as resulting from the previous undercover drug sale.
Curry cites United States v. Escamilla, 666 F.2d 126 (5th Cir.1982), as support for his view that the lower court erred in refusing to grant a mistrial. That court stated:
To require a new trial, the prejudicial effect of improper matter viewed in the context of that particular trial, must not be overwhelmed by evidence of guilt. A significant possibility must exist that, considering the other evidence presented by both the prosecution and the defense, the ... statement has a substantial impact upon the verdict of the jury.
Id. at 128.
We find no basis upon which a mistrial should have been granted in view of any testimony by Officer Gibson. First, Curry’s argument that the currency and testimony concerning its seizure was prejudicial is again based on his contention that it was obtained illegally. As discussed in the previous assignment, the currency was obtained pursuant to an arrest based on probable cause, and therefore this argument necessarily fails.
Second, despite the fact that the possession charge was dismissed, the testimony concerning the currency was separately relevant to the charge on the sale of cocaine. It is an elementary rule that relevant evidence is “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence.” Mississippi Rules of Evidence, Rule 401. In our view there could be little evidence more relevant in tending to prove Curry’s participation in the drug sale than the marked bills found on his person shortly thereafter. Curry offered no explanation for the marked bills included within his money at the time of his arrest other than his theory, that if he had been paid $50 by the police for cocaine, “then I would have had two hundred thirty-two dollars. And I didn’t have no two hundred thirty-two dollars on me.”
Finally, if Curry’s own version of the events is taken as true, there is no question that the Crown Royal bag mentioned by Officer Gibson was in the car when the police stopped him. Curry further testified he had $187 in his pocket at that time. Curry’s testimony was that he found the bag under his steps and was transporting it to the sheriff when he was stopped. Thus, testimony concerning the bag could only corroborate Curry’s story and was harmless at best.
In addition to the testimony by Officer Gibson of which Curry complains, the jury had ample other evidence to consider. In particular, the State introduced a videotape of the transaction, the identification by several officers of Curry, his car, his personalized car tag, and the napkin inscribed with Curry’s nickname and phone number and containing rocks of crack cocaine. We find Curry was not prejudiced by the admission of the clearly relevant evidence, legally obtained on the sale charge for which he was tried. Though Curry insists he would not have been convicted but for the admission of testimony concerning the seizure of and the currency itself, it is clear that there was additional, substantial and overwhelming evidence upon which the jury could have based their verdict. This issue is without merit.

CONCLUSION

After careful consideration of the issues raised on appeal, we hold the lower court committed no error. The officers had sufficient probable cause to arrest Curry based on their personal observation of an earlier *812 felony being committed, in addition to a traffic violation. With probable cause for arrest, the ensuing search of Curry’s person and the discovery and admission into evidence of currency used in a drug sale were permissible. Further, there was no error in the judge’s refusal to grant a mistrial. Testimony relating to the search of Curry’s vehicle and the discovery of the currency on his person was relevant evidence, lawfully obtained and clearly admissible. Finally, there was overwhelming evidence which the jury could have considered in rendering Curry guilty. The decision of the lower court and sentence of six years in the custody of the MDOC and fine of three thousand dollars is affirmed.
CONVICTION OF SALE OF COCAINE WITH A SENTENCE OF 6 YEARS IN MISSISSIPPI DEPARTMENT OF CORRECTIONS AND A FINE OF $3,000.00, AFFIRMED. THIS SENTENCE SHALL RUN CONSECUTIVE TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS and JAMES L. ROBERTS, Jr., JJ. concur.
McRAE, J., not participating.