## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 97-KA-00718-SCT

*STEVIE T. OTT, A/K/A STEVEN T. OTT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/21/97 |
| TRIAL JUDGE: | HON. LARRY EUGENE ROBERTS |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | H. W. SONNY JONES, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT T. ALLRED |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/15/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/5/98 |

**BEFORE PRATHER, C.J., BANKS AND WALLER, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

### INTRODUCTION

¶1. A Lauderdale County grand jury indicted defendant, Steven (Stevie) T. Ott, on three counts: (1) sale of less than one ounce of marijuana; (2) sale of less than one ounce of marijuana as part of a common plan or scheme or as part of the same transaction or occurrence; and (3) possession of over one ounce of marijuana with the intent to sell. Officers with the Meridan Police Department and the Mississippi Bureau of Narcotics testified the two alleged sales took place in the parking lot of a Meridian McDonalds approximately seven hours apart. After the second alleged sale, Ott was arrested after a brief car chase. Officers recovered a brown case[1] and several bags of marijuana from a road side where the items were allegedly thrown by Ott during the car chase. The trial judge denied Ott's motion to sever the charges and try Counts II and III separately. Trial was held in Lauderdale County Circuit Court on April 10 and 11, 1997. The jury convicted Ott on all three counts on April 11, 1997. The trial judge sentenced Ott to a $1000 fine and three years with one year suspended on Count I, a $1000 fine and three years with one year suspended on Count II, and a $1000 fine and ten years with six years suspended and five years probation on Count III. All sentences were to be served consecutively. After Ott's motion for JNOV/new trial was denied on June 5, 1997, Ott timely

appealed to this Court assigning three errors:

**I. THE ACTIONS OF THE COURT IN ALLOWING THE STATE TO TRY THE APPELLANT ON TWO SEPARATE CHARGES OF SALE OF MARIJUANA BEFORE THE SAME JURY RATHER THAN SEVER SUCH CHARGES WAS AN ABUSE OF DISCRETION**

**II. THE ADMISSION OF EVIDENCE OVER THE OBJECTION OF THE APPELLANT TO THE FAILURE OF THE STATE TO COMPLY WITH SECTION 41-29-501 THROUGH SECTION 41-29-537 DEALING WITH THE INTERCEPTION, RECORDING, AND ADMISSIBILITY OF ORAL COMMUNICATIONS WAS ERROR**

**III. THE ADMISSION OF EVIDENCE OBTAINED DURING AN IMPROPER SEARCH WAS ERROR**

## FACTS

¶2. Mississippi Bureau of Narcotics Agent, Chris Bishop testified on September 5, 1997, that he arranged with MBN agent, Leigh Harvey and a Confidential Informant (CI) to set up a controlled drug buy from Ott. Bishop testified he met with Harvey, the CI and another MBN agent, Jimmy Nichols, in a pre-buy meeting the morning of September 6, 1997. At this meeting Harvey was equipped with a hidden "code ten transmitter" to transmit any conversations she had with the informant and Mr. Ott during the alleged buy. Harvey was also given $100 in state funds to purchase marijuana. Agent Nichols searched the CI and found nothing. The CI paged Ott and as a result the participants then left the pre-buy meeting with Harvey and the CI leaving in one vehicle and Bishop and Nichols following in another. Ott's attorney objected to any testimony concerning the "wire" worn by Agent Harvey. Outside the presence of the jury, Ott's attorney argued sections 41-29-501 through 41-29-536 of the Mississippi Code prohibit the use of communications recorded without the consent of the parties involved in the conversation. After discussion and an offer of proof by the State to show the State had the consent of the CI, the judge overruled Ott's objection and granted him a continuing objection to all testimony derived from the use of the transmitter.

¶3. Bishop further testified he and Nichols followed Harvey and the CI to a McDonalds parking lot. Bishop and Nichols waited and watched from a nearby lot while Harvey and the CI parked in the McDonalds lot. Harvey testified about ten minutes after she and the CI arrived, Ott drove into the McDonalds parking lot in a cream colored Buick Regal.

¶4. Harvey stated Ott got out of his car and walked to the car in which she and the CI were sitting and spoke with the CI. Harvey said after they were introduced, the CI asked Ott, "How much for an ounce?" Ott told them to get in his car. Harvey got out of her car and got in Ott's car, where Ott allegedly pulled out a brown case containing three bags of marijuana. Harvey testified she purchased one bag of marijuana from Ott and paid $100 in state funds. Harvey stated she got out of Ott's car, got back into her car and watched Ott drive away.

¶5. Agents Bishop, Harvey and Nichols testified they held a post-buy meeting with the CI after the alleged buy took place. At the post buy meeting Agent Harvey reported to Agent Bishop what she had allegedly seen in Ott's car. Agent Bishop testified Agent Harvey's statements were consistent

with what he had heard transmitted from Agent Harvey's body wire and with what he saw through his binoculars during the alleged buy.

¶6. Later that day, Agent Bishop worked with another informant, Marlon Knox. Knox told Bishop he knew Ott and could buy marijuana from him. Knox also told Bishop about a brown case Ott carried with several bags of marijuana and that he could page Ott to set up a buy. Bishop testified Knox's statements were consistent with what he had learned from Agent Harvey earlier in the day and based on this information Bishop decided to set up another buy from Ott using Knox.

¶7. Knox testified at a pre-buy meeting that he and his vehicle were searched and he was outfitted with a body wire. Knox called Ott's pager number and set up a meeting at the same McDonalds. Alone, Knox drove to the McDonalds parking lot where he met Ott. Agent Bishop testified he and Agents Stanley Wash and Alan Anderson followed in Agent Anderson's van and parked approximately 75 to 100 yards away to observe and listen to the transmitted conversations. Bishop also testified he asked Police K-9 Officer Ricky Roberts to participate in anticipation of using a drug dog to search Ott's car. Roberts parked next to Anderson's van and testified he could hear the transmission from Knox's body wire, but he could not understand everything said. Ott's attorney renewed his objection to any evidence related to the content of the wire transmission.

¶8. Knox testified Ott drove to McDonalds in a Regal and parked. Knox then got out of his car and got into the front passenger seat of Ott's car. Knox then asked Ott, "did he have any bud, and he said yes." Knox stated Ott took out a brown case and from which Ott got a bag of marijuana. Knox stated he paid Ott $100 in state funds for the bag. Knox then stated he took the marijuana, got back into his car, drove to the Task force office, turned the bag over to Agent Bishop and left.

¶9. Agent Bishop testified he heard the conversation and the alleged transaction take place through the transmission. He said when Ott drove away, he sent Officer Roberts to follow for a while and then to make a "traffic stop" so Ott would not suspect Knox had been involved in a controlled buy. Agents Bishop, Wash and Anderson watched as Officer Roberts drove away. Officer Roberts radioed he stopped Ott's car.

¶10. Officer Roberts testified Ott failed to use a turn signal at the intersection of Valley and 47th streets so he made a traffic stop. Officer Roberts then testified when he stopped Ott's car, Ott got out and walked back toward Roberts's car. Officer Roberts told him to turn his engine off, but when Ott got back in his car, he sped away. Agent Bishop testified Roberts radioed for help in pursuit and the three agents in Agent Anderson's van took out after Ott and Officer Roberts.

¶11. Officer Roberts testified during the chase, Ott threw something from the window. Roberts radioed the location where Ott threw the item out back to the Agents in the van. Ott then stopped his car and Officer Roberts held him until help arrived.

¶12. Meanwhile, the agents in the van stopped and looked for what Officer Roberts reported had been thrown from Ott's car. Agent Bishop testified the officers found a brown case similar to the one described earlier by Agent Harvey and Knox. Bishop testified they also found plastic bags and a green leafy substance scattered around the bags. Agent Bishop and Agent Wash secured the evidence while Agent Anderson left to help Officer Roberts. The marijuana from the morning buy and from the afternoon buy and the green leafy substance collected from the roadside were sent to the East

Mississippi Crime Lab where it was weighed and tested. The plant material sent to the lab was found to be marijuana. The weight of the marijuana in the bags from the morning buy and the afternoon buy was slightly less than one ounce each for each bag.

¶13. Ott called one witness in his defense, Dawn Michelle Conklin, a corrections officer with the Lauderdale County Jail. With this witness, Ott attempted to show when his property was taken from him and inventoried, he was not given a receipt for all of his money. Conklin testified when Ott was brought to the jail and given a receipt for his belongings, he said, "where is the rest of my money." She also testified Ott's money looked like a "wad of bills."

¶14. After deliberations, the jury returned a verdict of guilty on all three counts. After a sentencing report and hearing, the trial judge sentenced Ott to a $1000 fine and three years with one year suspended on Count I, a $1000 fine and three years with one year suspended on Count II, and a $1000 fine and ten years with six years suspended and five years probation on Count III. All sentences were to be served consecutively. Ott timely appealed.

## DISCUSSION OF LAW

### I. THE ACTIONS OF THE COURT IN ALLOWING THE STATE TO TRY THE APPELLANT ON TWO SEPARATE CHARGES OF SALE OF MARIJUANA BEFORE THE SAME JURY RATHER THAN SEVER SUCH CHARGES WAS AN ABUSE OF DISCRETION

¶15. Ott argues prior to trial, the trial judge incorrectly denied his ore tenus motion to sever the counts of the indictment against him.

> When a multi-count indictment has been returned and the defendant requests severance, a hearing should be held on the issue. *Corley v. State*, 584 So. 2d 769, 772 (Miss.1991). The State bears the burden of a prima facie showing that the offenses are within the language of Miss. Code Ann. § 99-7-2 (1994), which allows multi-count indictments. *Corley*, 584 So .2d at 772. If this burden is met by the State, the defense "may rebut by showing that the offenses were separate and distinct acts or transactions." *Id*. The trial court should consider the time period between the offenses, whether evidence proving each offense would be admissible to prove the other counts, and whether the offenses are interwoven. *Id*. If this procedure is followed, this Court will give deference to the trial court's findings on review, employing the abuse of discretion standard. *Corley*, 584 So. 2d at 772.

*Eakes v. State*, 665 So. 2d 852, 861 (Miss. 1995) (footnote omitted).

¶16. Section 99-7-2 of the Mississippi Code provides:

> (1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.
>
> (2) Where two (2) or more offenses are properly charged in separate counts of a single

indictment, all such charges may be tried in a single proceeding.

(3) When a defendant is convicted of two (2) or more offenses charged in separate counts of an indictment, the court shall impose separate sentences for each such conviction.

(4) The jury or the court, in cases in which the jury is waived, shall return a separate verdict for each count of an indictment drawn under subsection (1) of this section.

(5) Nothing contained in this section shall be construed to prohibit the court from exercising its statutory authority to suspend either the imposition or execution of any sentence or sentences imposed hereunder, nor to prohibit the court from exercising its discretion to impose such sentences to run either concurrently with or consecutively to each other or any other sentence or sentences previously imposed upon the defendant.

Miss. Code Ann. § 99-7-2 (1994).[2]

¶17. Ott first argues the exchange that took place in chambers after his ore tenus motion was made does not constitute a hearing. The motion to sever was made in chambers before the start of the trial. The trial judge asked the State to state its position on the motion for the record. The State explained what it expected the evidence to show. Ott was then given an opportunity to rebut the State's explanation.

¶18. Ott next argues that the State failed to make a prima facie showing that the charged offenses met the requirements of § 99-7-2. The State proffered what it believed the evidence would show concerning the two alleged buys. The State explained that the evidence would show (1) the first buy took place on the morning of September 6, 1997 around eleven o'clock; (2) Ott was contacted by a pager; (3) Ott drove to the McDonalds where the buy took place; (4) Ott had a large quantity of marijuana in his car; (5) Ott sold a bag of marijuana to Agent Harvey (6) based on information from the first buy the agents set up a second buy; (7) for the second buy, Ott was again paged and came to the McDonalds; (8) the second buy took place at 5:13 p.m.; (9) a different purchaser was used for the second buy; (10) when Ott left the second buy, Officer Roberts was dispatched to stop him and a chase ensued; (11) Ott was arrested; (12) evidence from both crimes would be admissible if the two were tried separately.

¶19. Ott's rebuttal was (1) the sales took place at different times; (2) the sales involved two different purchasers; and (3) the agents did not intend to set up a second buy until after the first buy was completed.

¶20. After the exchange, the trial judge issued his decision:

It's the Court's opinion that the evidence at least proffered to the Court is sufficient in my mind to proceed under Rule 7.07 (a) of two or more offenses constituting part of a common scheme or plan or connected together. This defendant is charged with possession with intent to deliver or sell apparently within a few minutes prior to that arrest on the possession charge an alleged sale transaction occurred and that at approximately five[3] hours prior to that in the same vehicle and the same container of marijuana allegedly was retrieved to sell at approximately 11 a.m. in the morning. I see them sufficiently connected together to be part of a common scheme which

would allow you [the State] to try them all under the same jury. So I am going to deny your motion for a severance.

¶21. The trial judge properly conducted a hearing on the ore tenus motion to sever. The judge required the State to state its position for the record and then afforded Ott an opportunity to rebut. The State met its burden of making a prima facie case showing the two counts were "connected together or constituting parts of a common scheme or plan" as required by § 99-7-2. Based on the State's proffer, the two alleged buys were sufficiently connected to meet the requirements of the statute. Ott's rebuttal does not satisfy the requirement of a showing the offenses were separate and distinct acts or transactions as required by *Corley*. Alone, the seven hour time lapse between the two sales is not enough to satisfy the requirement, nor is Ott's assertion that the sales involved two different purchasers enough to make the crimes separate and distinct. Ott cites *Gray v. State*, 549 So. 2d 1316 (Miss. 1989) and *McCarty v. State*, 554 So. 2d 909 (Miss. 1989), as authority for his proposition that because the crimes took place seven hours apart and involved two different victims the crimes are separate and distinct.

¶22. In *Gray* this Court held an indictment improperly joined eight counts of making harassing telephone calls where the indictment charged the defendant with two different crimes on two different dates against two different victims. *Gray*, 549 So. 2d at 1323. In *McCarty*, this Court held two burglaries could not be charged in the same indictment where the burglaries were committed on two different days and at least two days apart, the two houses involved in the burglaries belonged to different individuals and were miles apart, and nothing in the record indicated that there was a plan involved in burglarizing the houses. *McCarty*, 554 So. 2d at 915-16. In *McCarty*, this Court went on to say a multi-count indictment is proper only where the charged offenses arise from a common transaction or occurrence or when the occurrences are at different times, *where that time period is insignificant. Id*. at 915 (emphasis added).

¶23. For Ott's case neither the time period nor the different victims is significant because Ott's "common plan or scheme" was to sell marijuana to callers who paged him and met him at the Meridian McDonalds. A seven hour time period between two sales of marijuana under the same conditions involving two different police informants, is insignificant.

¶24. Although in his ruling the trial judge did not address the mutual admissibility of evidence of the crimes, the evidentiary question was addressed during the hearing on the ore tenus motion. The State argued that evidence of the two sales would be admissible in separate trials under Rule 404(b) of the Mississippi Rules of Evidence. Under Rule 404(b), evidence of other offenses is admissible to prove intent, preparation and plan. Miss. Rule Evid. 404(b). Ott did not address this point in his rebuttal. If the counts were tried separately, under 404(b) evidence of the other crimes would be allowed. *See Smith v. State*, 656 So. 2d 95, 98-99 (Miss. 1995) (stating evidence of prior drug sales is admissible to prove intent when accompanied by a limiting instruction under 403).

¶25. The final component of the *Corley* scheme is the "interwoven" element. In the case *sub judice*, the second buy was a direct result of information gained during the first buy. If the agents had not heard from Agent Harvey that Ott kept a brown case containing marijuana in his car, they would not have set up the second buy. Thus, the trial judge's finding that the crimes were interwoven was justified.

¶26. The trial judge properly held a hearing on severance and then applied the proper review. In doing so, he did not abuse his discretion. This assignment has no merit.

**II. THE ADMISSION OF EVIDENCE OVER THE OBJECTION OF THE APPELLANT TO THE FAILURE OF THE STATE TO COMPLY WITH SECTION 41-29-501 THROUGH SECTION 41-29-537 DEALING WITH THE INTERCEPTION, RECORDING, AND ADMISSIBILITY OF ORAL COMMUNICATIONS WAS ERROR**

¶27. Ott argues that sections 41-29-501 to -537 of the Mississippi Code titled, "Interception of Wire or Oral Communications," prevents introduction of any evidence of the oral communications transmitted over the "body wires" worn by Agent Harvey and Marlon Knox. As authority, Ott cites the statute itself. Section 41-29-501(j) defines oral communication as "an oral communication uttered by a person exhibiting an expectation that the communication is not subject to interception under circumstances justifying that expectation." Miss. Code Ann. § 41-29-501(j) (Supp. 1997).

¶28. According to Ott's interpretation of these sections of the Mississippi Code, Ott had an expectation that his conversations with Agent Harvey and Marlon Knox were not subject to interception and that any interception and use of information from the interception was barred by §41-29-503. Section 41-29-503 states:

> The contents of an intercepted wire, oral or other communication and evidence derived from an intercepted wire, oral or other communication *may not be received in evidence* in any trial, hearing or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States or of this state or a political subdivision of this state if the disclosure of that information would be in violation of this article. The contents of an intercepted wire, oral or other communication and evidence derived from an intercepted communication may be received in a civil trial, hearing or other proceeding only if the civil trial, hearing or other proceeding arises out of a violation of the criminal law of this state.

Miss. Code Ann. § 41-29-503 (Supp. 1997) (emphasis added).

¶29. Ott argues it was reversible error for the court below to ignore the letter of these statutes and allow evidence related to the transmitted communications. For that reason Ott argues his conviction should be overturned and a new trial ordered.

¶30. The State argues that a proper interpretation of §§ 41-29-503(j) and 503(k) would allow evidence obtained from the transmissions of the conversations of Agent Harvey and Marlon Knox. These two sections provide:

> (j) "Oral communication" means an oral communication uttered by a person exhibiting an expectation that the communication is not subject to interception *under circumstances justifying that expectation.*
>
> (k) "Other communication" means *any transfer of an electronic or other signal*, including fax signals, computer generated signals, other similar signals, or any scrambled or encrypted signal transferred via wire, radio, electromagnetic, photoelectric or photooptical system *from one*

*party to another in which the involved parties may reasonably expect the communication to be private.*

Miss. Code Ann. §§ 41-29-501(j) & (k) (Supp. 1997) (emphasis added).

¶31. In overruling Ott's motion to exclude the communications, the trial judge found and ruled as follows:

My opinion about the effect of this act as it relates to the fact circumstances of this situation is that the act is not applicable and the reasons for my opinion of that is that one of the parties to this interception is a consenting party and that no person who is out on the streets dealing drugs to unknown people and accepting money for drugs should have a reasonable expectation that what they say is private, that when they are in that business dealing drugs if that is in fact what they are doing they run the hazards of dealing with undercover law enforcement officers, and they cannot reasonably expect in my mind that their communications will not be recorded in some fashion electronically.

The trial judge's conclusion is well founded.

¶32. Under the terms of § 41-29-501(j), the circumstances of the drug buy did not justify an expectation that the conversations would not be intercepted. Ott sold marijuana to an unknown person in a public parking lot. The circumstances of the sale can not be said to justify an expectation that Ott's conversation with the drug buyers was not subject to interception. More importantly, the explicit terms of § 41-29-501(k) require the "*involved parties . . . reasonably expect the communication to be private.*"

¶33. It is clear from a reading of the definitions and terms of the Act that the Act was intended to regulate recordings by the State of two or more parties without the knowledge of any of the parties. The Act was not intended to prevent police officials from outfitting police agents or confidential informants with "body wires" for use during police investigative activities.

¶34. This assignment has no merit.

### III. THE ADMISSION OF EVIDENCE OBTAINED DURING AN IMPROPER SEARCH WAS ERROR

¶35. In his third assignment of error, Ott argues the stop and subsequent chase after the alleged second controlled buy led to the illegal obtaining of evidence, namely the brown case and the multiple bags of marijuana. Although the State argues this objection is waived because Ott failed to timely object, Ott did move to suppress this testimony when Roberts completed his testimony. The State's assertion is therefore without merit.

¶36. Ott asserts Officer Roberts illegally stopped him because (1) Officer Roberts had no warrant and (2) Officer Roberts did not have knowledge of a felony or misdemeanor committed in his presence.

¶37. This Court has held an officer may make a warrantless arrest based on his own personal observations or based on communications with other officers. *See **Curry v. State,*** 631 So. 2d 806, 810 (Miss. 1994) (stating officer's own personal observation of completed sale of controlled

substance gave probable cause for subsequent warrantless arrest); *Alexander v. State*, 503 So. 2d 235, 238 (Miss. 1987) (finding officer had probable cause to arrest defendant under totality of circumstances, where officer had information from confidential informant that defendant was selling marijuana); *Hamburg v. State,* 248 So. 2d 430 (Miss. 1971) (*citing Fuqua v. State,* 246 Miss. 191, 145 So. 2d 152 (Miss. 1962)) (stating arresting officer may presume official information to be authentic).

¶38. Officer Roberts attended a pre-buy meeting, he was present along with the narcotics surveillance officers during the alleged buy, although he testified he couldn't hear the transmission from the body wire, the surveillance officers told him the informant had made the buy and Ott still had contraband in his vehicle. Based on this information, Officer Roberts had probable cause to arrest Ott without a warrant. Therefore, this assignment is without merit.

## CONCLUSION

¶39. The trial judge did not abuse his discretion in denying Ott's motion to sever the charges and try the counts before separate juries. The trial judge held a hearing and afforded Ott an opportunity to rebut after the State made a prima facie case that the charges should not be severed. After considering the time period, the admissibility of evidence and the interwovenness of the charges, the trial judge properly denied the motion to sever.

¶40. Evidence relating to the communications intercepted through the use of "body wires" on Agent Harvey and Marlon Knox was not improperly allowed by the trial judge. The circumstances surrounding Ott's conversations with Harvey and Knox did not justify an expectation the conversations would not be intercepted.

¶41. Officer Roberts had probable cause to stop and arrest Ott without a warrant based on the information he received at the second pre-buy meeting and based on what he observed and was told during the second buy.

¶42. For these reasons the decision of the court below is affirmed.

¶43. **COUNT I: CONVICTION OF SALE OF LESS THAN ONE (1) OUNCE OF MARIJUANA AND SENTENCE TO SERVE THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH ONE (1) YEAR SUSPENDED, AND FINE OF $1,000 AFFIRMED. COUNT II: CONVICTION FOR SALE OF LESS THAN ONE (1) OUNCE OF MARIJUANA AND SENTENCE TO SERVE THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH ONE (1) YEAR SUSPENDED, AND FINE OF $1,000 AFFIRMED. COUNT III: CONVICTION OF POSSESSION OF MORE THAN ONE (1) OUNCE OF MARIJUANA WITH INTENT TO DELIVER AND SENTENCE TO SERVE TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SIX (6) YEARS SUSPENDED, AND FINE OF $1,000 AFFIRMED. THE SENTENCES IN COUNTS I, II AND III SHALL BE SERVED CONSECUTIVELY.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**

1. This item was also described by various witnesses as a game box, a brown box and a tape case. We will refer to it as a brown case.

2. Rule 7.07 of the Uniform Rules of Circuit and County Court Practice is very similar to this section. The only difference is in the order and numbering of the provisions and the references to the trial judge and jury.

3. As the State correctly points out in its brief, the time period was actually approximately seven hours.