874 So.2d 486 (2004)
Johnny Cornelius WATKINS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01122-COA.
Court of Appeals of Mississippi.
May 25, 2004.
*487 Jim Davis, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before SOUTHWICK, P.J., THOMAS, IRVING and GRIFFIS, JJ.
THOMAS, J., for the Court.
¶ 1. Johnny Cornelius Watkins appeals his convictions by a Harrison County Circuit Court jury of two counts of transfer of a controlled substance. Watkins asserts a single error in the proceedings below, that he received ineffective assistance of counsel. Specifically, he states counsel did not make any motions for discovery, counsel failed to request a severance of the two counts against him, counsel failed to file a motion in limine or obtain another ruling to prevent the State from using prior convictions against him as impeachment material, counsel failed to object to a certain statement made by the State during voir dire, counsel failed to object to testimony by a law enforcement officer not based on personal knowledge, and counsel failed to offer any jury instructions.
¶ 2. After reviewing the record, we disagree that Watkins received ineffective assistance from his counsel and now affirm the conviction.

FACTS
¶ 3. In May 2002, Tanya Ost of the Gulfport Police Department worked as an undercover buyer as part of a drug enforcement plan called Operation Rock Garden. The plan did not target any particular individual. Rather, Ost was placed in a vehicle outfitted with both audio and visual recording devices then she would cruise neighborhoods known to have high rates of drug sales and purchase crack cocaine from anyone who would sell it to her.
¶ 4. On May 20, 2002, Ost was performing these duties when she encountered *488 Watkins, nicknamed "Old School," who sold her twenty dollars' worth of crack cocaine. Ost was alone in the vehicle at the time but the meeting was captured by the recording devices. The supervising detective, Gary Ponthieux, was in a separate vehicle out of sight so as not to arouse suspicion in the neighborhood. Ponthieux could hear but not see events as they transpired.
¶ 5. Upon completing the purchase, Ost returned to Ponthieux's location, turned over the cocaine and watched as Ponthieux sealed it in an evidence bag. The video recording was retrieved from Ost's vehicle and a still photograph was made from the tape of Watkins' face. Ponthieux recognized Watkins from the photo, calling him by his nickname, "Old School."
¶ 6. On May 23, 2002, Ost was again about her duties in the same Gulfport neighborhood when she was approached by Watkins. Before stopping the vehicle, Ost checked with Ponthieux whether she should buy from Watkins again or seek out a different seller. In the end, Ost stopped and again purchased twenty dollars' worth of crack cocaine from Watkins.
¶ 7. Watkins was subsequently arrested and indicted as an habitual offender for two counts of transfer of narcotics. Trial was had May 13, 2003. The State offered the testimony of Ost, Ponthieux and Tara Milam, an analyst with the Mississippi Crime Laboratory, who confirmed the substance in each of the evidence bags given her by Gulfport police contained one-tenth of a gram of cocaine. Both videotapes made of the meetings were entered into evidence and played for the jury. Watkins argued at trial the State had not met its burden of proof beyond a reasonable doubt because the videotapes did not capture the actual transfer of narcotics. Watkins did not testify or offer any witnesses. After deliberating approximately twenty-three minutes, the jury returned verdicts of guilty on both counts.

ANALYSIS
¶ 8. Claims of ineffective assistance of counsel are reviewed based upon a two-part inquiry: (1) whether counsel's performance was deficient; and (2) whether that deficiency caused prejudice to the defendant. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Deficient performance is evaluated by whether counsel's advice falls outside objective parameters of professional reasonableness. Id. at 687-88. Prejudice is measured by whether the result of the proceedings would have been different but for counsel's deficiency. Cole v. State, 666 So.2d 767, 775 (Miss.1995).
1. Discovery
¶ 9. For reasons not disclosed in the record, Watkins was granted substitute counsel, Michael Hester, who represented Watkins at trial. The first attorney to represent Watkins obtained the discoverable evidence from the State and turned it over to Hester. The day before trial, Hester reviewed the videotapes with his client who then informed him they did not contain the full version of events.
¶ 10. Upon cross-examination of Ost, Hester elicited the fact that the tapes had been edited, although Ost had represented on direct examination they contained a fair, accurate and unaltered recording of her meetings with Watkins. Ost further testified no part of the meetings had been altered but the portions before and after the meetings had been edited out as they contained nothing but empty minutes of her driving to the buy area and then driving away from it.
¶ 11. Hester sought a mistrial or a dismissal, arguing Ost had misled the court, *489 the State had committed a discovery violation as he had been led to believe the remaining portions of the tape contained exculpatory evidence. In response, the State pointed out the unedited tapes had been disclosed in discovery and had always been available for review, a fact which Hester did admit. The court ordered the unedited tapes be given Hester and Watkins for their review during a recess. Following the recess, the objection to the tapes was withdrawn.
¶ 12. Having thoroughly reviewed the circumstances upon which Watkins bases this assignment of deficient performance, we believe the true thrust of Watkins' argument is not that Hester failed to request discoverable material but that Hester failed to fully review the information made available to him prior to the eve of trial. These are two quite different things.
¶ 13. As to the former, Watkins does not address what materials remained unavailable to him for use at trial through some error of his attorney. There is no allegation that other evidence, undisclosed due to counsel's negligence, exists. Counsel cannot be held ineffective for failing to request evidence which does not exist.
¶ 14. As to the latter, even were we to assume error on the part of Hester in failing to review the unedited videotapes, we can find no prejudice to the appellant as a result. After viewing the videotapes, the objection to them was withdrawn. Whatever exculpatory evidence counsel was led to believe existed in fact did not exist. We cannot see how the outcome of the trial would have differed from the result achieved.
2. Severance
¶ 15. Watkins next argues trial counsel should have requested a severance of the two charges against him. He suggests that having to defend two identical crimes prejudices him in the eyes of the jury for, having seen him commit one crime, the burden of proof is lowered so that a jury will convict on the second charge despite deficiencies in the evidence presented.
¶ 16. The reasoning employed by Watkins is the basis of the refusal to allow the prosecution of separate and distinct crimes in a single proceeding. Corley v. State, 584 So.2d 769, 772 (Miss.1991). However, where two or more offenses are based on the same act or transactions, or more than one act or transaction are connected together or which constitute part of a common scheme or plan, they may be prosecuted together. Miss.Code Ann. § 99-7-2 (Rev.2000).
¶ 17. Watkins implies without stating explicitly that the two charges constitute separate transactions by pointing out they occurred on different days, seventy-two hours apart. Had a motion to sever been made below, the State would have been obliged to establish a prima facie case the charges fall within the scope of the statute. Corley, 584 So.2d at 772. The defendant would then need to rebut that showing. Id. Because the claim arises from an allegation of ineffective assistance of counsel, Watkins bears the onus of making that showing on appeal.
¶ 18. There are three considerations when the charged offenses do not occur simultaneously: whether the time separating the occurrences is insignificant, whether the evidence proving each count would be admissible to prove each of the other counts, and whether the crimes are interwoven. Corley, 584 So.2d at 772. Watkins does not address any of these factors other than to state the crimes occurred on two different dates. Allegations of error on appeal unsupported by either argument or authority are generally not *490 considered. Ramseur v. State, 368 So.2d 842, 844 (Miss.1979).
¶ 19. We need not address this point but will do so briefly. Repeated sales of narcotics in a short span of time have been held to constitute part of a common scheme or plan under the applicable statute. Ott v. State, 722 So.2d 576, 581 (¶ 23) (Miss.1998). This alone may be sufficient to establish a prima facie case for the State. The length of time between the transactions is not excessive. Although time lapses of two days have been held significant for purposes of simultaneous prosecution, in those instances, differing crimes were involved, in different places and with different victims. See Gray v. State, 549 So.2d 1316 (Miss.1989); McCarty v. State, 554 So.2d 909 (Miss.1989). That is not the case here. Watkins was charged with two counts of the same crime in the same general location to the same undercover officer within seventy-two hours. We do not find the time period significant.
¶ 20. Likewise, the evidence of each of the crimes would likely be admissible in both instances. Under similar facts, evidence of other crimes would satisfy the balancing test of Rule 404(b) of the Mississippi Rules of Evidence, for the purposes of showing intent, preparation or plan. Ott, 722 So.2d at 576 (¶ 24). Again, Watkins gives no argument why this would not be so. Finally, as in Ott, the second purchase of cocaine from Watkins, while serendipitous in timing, was a direct result of knowledge gained during the first buy. Officer Ost knew Watkins would sell her crack cocaine. This has been held to satisfy the requirement that the crimes be interwoven. Id. (¶ 25).
¶ 21. There is no evidence to even suggest a basis for severance of the charges. Any motion to do so would have been specious and we cannot find deficiency in an attorney who declines to make frivolous motions.
3. Prior convictions
¶ 22. Watkins third assignment of deficiency states trial counsel should have sought a pre-trial motion in limine or other ruling to prevent the prosecution from using his prior convictions against him at trial as impeachment material. He opines that he may have testified had he been given some assurance the prior convictions would not be raised against him.
¶ 23. As a preliminary matter, we note Watkins was indicted as an habitual offender. "Habitual offender" is a status, not a crime itself, which may result in an enhanced sentence upon conviction of a crime. Gray v. State, 605 So.2d 791, 793 (Miss.1992). The State is required to prove the existence of two prior felony convictions to support the indictment. Davis v. State, 680 So.2d 848, 851 (Miss. 1996). However, introduction of evidence of prior crimes is ordinarily not admissible to prove the character of the accused in order to show he acted in conformity therewith. M.R.E. 404(b). It may be introduced to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. M.R.E. 404(b).
¶ 24. Watkins' prior convictions were for possession of cocaine and burglary of a business, both in August 1993, and possession of a controlled substance in February 1999. The burglary is clearly an unrelated charge and the narcotics convictions too remote in time to have any legitimate legal connection with the 2002 charges. Introduction of this evidence by the State would almost undoubtedly be solely for the purpose of showing Watkins' character, an improper use of the information. *491 ¶ 25. However, the State did not attempt to introduce this information during the trial. What Watkins appears to argue is that he could have testified on his own behalf if he had been assured his past would not catch up with him. The ability to avoid this was solely within Watkins' control. A defendant may be cross-examined on prior bad acts if he opens the door to such queries by essentially testifying he has lived a wholly blameless life. Collins v. State, 734 So.2d 247, 249 (Miss.Ct.App. 1999). The State could not itself raise the issue. All Watkins had to do to avoid impeachment with his prior convictions was refrain from perjuring himself on the stand.
¶ 26. Any motion made to exclude reference to prior convictions would have been an empty gesture, merely reminding the court and the State that the Rules of Evidence apply. This, too, would have been a frivolous motion.
4. Voir dire
¶ 27. Watkins now objects to a question posed by the prosecution during voir dire. That question was, "Is there anyone here that thinks our law enforcement agencies are turning a blind eye to the drug problem? Does anybody here feel that they're not doing enough to fight crime, drug abuse?" Two persons, neither of whom ultimately served on the jury, stated they felt this way.
¶ 28. Watkins suggests this was an improper urging to potential jurors to return a verdict reflective of the consciousness of the community. Such exhortations to "send a message" are improper. Bigner v. State, 822 So.2d 342, 352 (¶ 45) (Miss.Ct.App.2002). Although most commonly occurring during closing arguments, it is not inconceivable a venire may be primed during voir dire by such statements. However, when reading the paragraphs preceding and following this statement, the prosecution was not attempting to influence the jury but rather ascertain whether any veniremen held a bias or prejudice against law enforcement. There is no other logical context in which the question can be placed upon a review of the entire voir dire rather than a single page. Again, there was no legitimate basis for objection by counsel to this.
5. Improper testimony
¶ 29. The fifth allegation of deficient performance relates to the testimony of Gary Ponthieux for failing to object to testimony about which Ponthieux had neither personal knowledge nor qualification as an expert witness. Watkins alleges Ponthieux testified he could not remember the drug sale about which he was testifying and the detective should not have been allowed to make an identification of Watkins since he was not present at the alleged drug sale nor a qualified expert on making identifications.
¶ 30. The charge that Ponthieux could not remember the events of May 2002 is a mischaracterization of the testimony. What Ponthieux could not recall was that the plan had been named Operation Rock Garden. Ponthieux testified only to what he personally performed, such as taking custody of the cocaine from Ost and sealing it in an evidence bag, or that which he witnessed, either through the audio feed in the vehicle or upon viewing the videotape shortly after the sale. He testified to recognizing Watkins on the videotape as "Old School" then retrieving a photograph and showing it to Ost, who positively identified Watkins as the man who had sold her crack cocaine. This latter portion was established through the direct testimony of Ost. Ponthieux also testified that the person he saw on the videotapes was present in the courtroom and identified that individual *492 as the appellant. The remainder of his testimony was explanation of the procedures of the narcotics task force and handling of evidence by the police department.
¶ 31. None of this exceeds the scope of Ponthieux's personal knowledge. Nor was his identification of Watkins as the man on the videotapes an event which required expert qualification, but an ordinary identification. There was nothing objectionable in this testimony.
6. Jury instructions
¶ 32. The appellate argument on this matter follows:
The Defendant's attorney offered no jury instructions at trial and this was found to be further error potential evidence of ineffective assistance of counsel in Bigner at 353; Yarborough at 662. The Defendant could have taken a different strategy at trial and contested the identification of the Defendant and offered a identification issue at trial.... Defendant's attorney made a lack of evidence argument and moved for a directed verdict at the close of the State's case, then did not renew his request for directed verdict and offered no peremptory instruction at the close of all the evidence.
¶ 33. Although requesting a peremptory instruction is almost a matter of due course in a trial, the well-settled rule is that instructions must have some basis in evidence before they may be given. Fairchild v. State, 459 So.2d 793, 800 (Miss.1984). In reviewing the propriety of a peremptory instruction, the court accepts as true evidence submitted by the State and the reasonable inferences of that evidence. Wall v. State, 718 So.2d 1107, 1111 (¶ 15) (Miss.1998).
¶ 34. The evidence in this case would not have supported a peremptory instruction. The sales of drugs were recorded and an eyewitness testified consistently with the recordings. Taking this as true, Watkins would not have been entitled to a peremptory instruction.
¶ 35. For the same reason, there was no basis in the record for the second instruction flaw to which Watkins alludes, that is, a mistaken identity instruction should have been requested. The videotapes were very clear in both audio and visual quality. The failure to attempt to obtain an identity instruction under the circumstances here is at most harmless given the overwhelming proof.
¶ 36. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF TWO COUNTS OF TRANSFER OF NARCOTICS AND SENTENCE ON EACH COUNT OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER WITH SAID SENTENCES TO RUN CONCURRENTLY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.