554 So.2d 909 (1989)
Jimmy Earl McCARTY
v.
STATE of Mississippi.
No. 07-KA-58683.
Supreme Court of Mississippi.
December 6, 1989.
*910 Mark S. Howard, Waynesboro, for appellant.
Edwin Lloyd Pittman, Atty. Gen., elected Supreme Court Justice Jan. 3, 1989, Mike C. Moore, Atty. Gen., Harrison S. Ford, III, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
This is an appeal of the judgment and sentence of the Circuit Court of Wayne County, wherein Jimmy Earl McCarty was convicted of burglary and sentenced as an habitual offender under the provisions of Mississippi Code Annotated, Section 99-19-81 (Supp. 1988), to serve a term of ten (10) years, without the possibility of parole or probation. In reversing, we address two of the five errors asserted by McCarty on appeal.

STATEMENT OF FACTS
On July 15, 1987, the Wayne County Grand Jury returned a multi-count indictment against the appellant, charging that Jimmy Earl McCarty committed the crime of Burglary of the dwelling house of Robert L. Sumlin on June 17, 1987, and stealing four items: a rifle, a VCR, car battery, and a set of stereo speakers. The appellant was also indicted for the burglary of the dwelling house of Willie Bodie on June 19, 1987 and stealing a color television. A third count of providing stolen property to Alvin Worsham was filed against him, but the trial court granted appellant's demurrer.
Wayne County Deputy Sheriff, Harold McInnis arrested McCarty on June 19, 1987 as McCarty walked along the side of U.S., Highway 84 heading west toward Waynesboro in Wayne County, Mississippi. McCarty was taken to the sheriff's department, placed under arrest, and given his Miranda Warnings.[1] The appellant did not request counsel, but he did say that he *911 knew nothing about a burglary. Upon request the appellant gave the sheriff his tennis shoes, which were used to assist in the investigation of the burglary at Bodie's home. After further investigation the sheriff returned to the appellant and attempted to advise him of his rights, but McCarty cut him off explaining that he already knew his rights and still denied knowing anything about the burglary. After more investigation the sheriff again returned to McCarty and told him that he knew he had committed the burglaries. This time, however, the sheriff did not give nor attempt to give the appellant his Miranda warnings. In response, the appellant agreed to show the sheriff where the television was hidden. With McCarty's assistance the sheriff and his deputies recovered the television.
The appellant argues that he knew nothing about a burglary nor was he ever advised of his Miranda Rights. He also testified that he made no admission to the sheriff.

PROPOSITION I

THAT THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS HIS ALLEGED CONFESSION OR ADMISSION
It is undisputed that the appellant was subjected to custodial interrogation on three separate occasions. Although there is contradictory testimony concerning the first two interrogations the testimonies concerning the third interrogation do not differ.
According to the prosecution, the sheriff gave the appellant his Miranda Rights when he was brought to the department and placed under arrest. McCarty neither requested an attorney nor did he choose to talk other than saying that he knew nothing about the burglary and that he had been in Laurel. After more investigation, the sheriff approached the appellant inquiring about his involvement in the burglary. As the sheriff was explaining his rights to him again, McCarty abruptly interjected saying that he knew his rights. He again denied having any involvement in the burglary.
The deputy sheriff also testified at the suppression hearing as well as the trial. He stated that the sheriff did give the defendant his Miranda warnings when he brought McCarty into the office. Moreover, McCarty stated that he understood his rights, but he also denied knowing anything about the burglary. He also explained that on the second confrontation the defendant said that he knew his rights.
Although the sheriff and deputy differed on the exact location where the Miranda Warnings were given, their testimonies were substantially the same. However, the appellant continuously maintained, during the suppression hearing and the appeal, that the sheriff and his deputies never informed him of his rights, and made no confession or admission.

DISCUSSION OF LAW
In determining whether a confession was freely and voluntarily given the circuit court sits as the fact finder. The trial judge first must determine whether the accused has been adequately warned. And, under the totality of circumstances, the court then must determine if the accused voluntarily and intelligently waived his privilege against self-incrimination. Layne v. State, 542 So.2d 237, 239 (Miss. 1989); Pinkney v. State, 538 So.2d 329, 342 (Miss. 1988); and Gavin v. State, 473 So.2d 952, 954 (Miss. 1985). Accord Edwards v. Arizona, 451 U.S. 477, 486, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378, 387 (1981).
The defendant in the case sub judice does not attack the voluntariness of his alleged confession or the knowing waiver of his privilege against self-incrimination, but he does maintain that he made no confession or admission. He alleges that the sheriff and deputy failed to inform him of his rights altogether. Therefore, the State has the burden of proving all facts prerequisite to admissibility beyond a reasonable doubt. Gavin, 473 So.2d at 954 (citations omitted).
*912 There are practical and institutional limitations upon this Court's ability to find facts; consequently, much deference is placed upon the trial judge's full discharge of his responsibility to make findings of fact as the question of whether Miranda rights have been intelligently, knowingly and voluntarily waived. Gavin, supra at 955. Moreover, when there is conflicting evidence, as in this case, and the trial judge "determines that a confession is admissible, his finding becomes a finding of fact which will not be reversed on appeal unless it is manifestly in error or contrary to the overwhelming weight of the evidence." Pinkney, 538 So.2d at 342; see also, Frost v. State, 483 So.2d 1345, 1350 (Miss. 1986); Gavin, 473 So.2d at 955. Cf. Davis v. State, 551 So.2d 165 (Miss. 1989) (this Court is limited by substantial evidence rule when considering findings of fact).
The trial judge in this case made no extensive findings of fact. Rather, after listening to the evidence he was of the opinion that the motion to suppress "should be and is hereby overruled." Likewise at trial when the admission was offered into evidence, the defense objected; but the court simply overruled it.
As this Court has explained:
There will be no doubt times when such a cursory handling of the question of voluntariness will place us in an awkward position. We sit as an appellate court, and as such are ill equipped to find facts. Pragmatically speaking it is essential that we have from our trial courts findings of fact upon which we may rely, for, if we had to find the facts anew in every case coming before us, we would become even further bogged down in the dispatch and management of our case-load. Beyond that, even if we wanted to be fact finders, our capacity for such is limited in that we have only a cold, printed record to review. The trial judge who hears the witnesses live, observes their demeanor and in general smells the smoke of the battle is by his very position far better equipped to make findings of fact which will have the reliability that we need and desire.
Gavin, 473 So.2d at 955 (citations omitted).
But, when the trial judge fails to make specific findings and only makes general findings thereby allowing admissibility of evidence, this Court's scope of review is considerably broader particularly when the trial judge's findings on the precise points at issue on appeal are not clearly inferable from the findings made. See Jones v. State, 461 So.2d 686, 700 (Miss. 1984). This is particularly so where, as here, on the critical fact the record is uncontradicted.
Based upon the totality of circumstances and according the proper deference to the findings of fact made by the trial judge, it can not be said that the trial judge was in manifest error in concluding that Miranda Warnings were properly given during the first interrogation. There was no evidence of threats or coercion and the officers testified that the appellant understood those rights. See (Christine) Johnson v. State, 475 So.2d 1136, 1144 (Miss. 1985). But, the second confrontation is tainted with a bit of uncertainty because prior to it the sheriff did not give McCarty his rights, but instead, he said, "You know what your rights are." As he attempted to give the warnings, the appellant interjected saying, "I know my rights." In any event, the appellant still maintains that no rights were given.
The third confrontation, however, is not tainted with uncertainty for it is clear that no rights were given. The sheriff admits to failing to give the warnings when he approached the defendant. This scenario poses a different situation altogether from the first two encounters, and it creates a problem for the State's case. The sheriff failed to comply with Rule 1.03, Miss.Unif.Crim.R.Cir.Ct.Prac. (1979).[2]

*913 A careful reading of that Rule disposes of this issue. Rule 1.03, in addition to setting out the six warnings which must be given, in pertinent part says:
These warnings must be made after the person is placed under arrest or physically detained prior to questioning.
The Miranda warnings should be given prior to any subsequent interrogation session with the person in custody even though the warnings were given in the prior interrogation.
Johnson, 475 So.2d at 1145.
In Johnson the defendant was interrogated twice at her apartment in an investigation concerning the death of her 3 1/2 month old son. 475 So.2d at 1138. Her Miranda warnings were read to her and a statement was taken. Id. at 1144. An hour later, a second statement was taken; however, this time the investigator failed to tell her that any statement she made could be used against her. Id. At the suppression hearing, the trial judge found that a deputy had read Ms. Johnson all of her rights, and that an investigator had also explained them to her. Id. at 1144-45. In addition, Johnson testified that the officers had told her that she had the right to remain silent and that anything that she said would be used against her. Id. at 1145. From this testimony the trial judge found that Johnson had made a knowing and voluntary waiver or her rights. Id.
In addressing the investigator's failure to fully comply with Rule 1.03 this Court explained:
When the warnings must be given allows no wiggle room. However, when they should be given allows some very slight room for interpretation, particularly when the two descriptive words are used in such close conjunction as they are here. That `should' conjures up an obligation, if not a duty, cannot be denied. (Emphasis in original)
475 So.2d at 1145.
Like Johnson, in the case sub judice there is no evidence of threats, coercion, or promises of leniency. However, unlike Johnson, McCarty was under arrest each time he was interrogated. He was jailed and remained in custody during the second and third confrontations. Moreover, he was handcuffed and taken to the area where the television was found. During the ride to the location the sheriff constantly interrogated him. And, when they returned to the sheriff department, McCarty still was not given his rights; yet, the sheriff did ask him for a written statement, but McCarty refused. Moreover, since McCarty denies that he was given any rights, it can not be said that he did understand those rights. As a matter of fact, the appellant claims that he only learned of his rights after asking around in jail. Finally, in contrast to Johnson, the time between the first and third interrogations was 3 1/2 to 4 hours whereas Johnson's two interrogations took place within an hour of one another.
Therefore, it is beyond doubt that McCarty was not adequately warned of his rights against self-incrimination, and the trial judge should have excluded any statement that McCarty may have made. In addition, we can not overemphasize the obligation of our trial judges to make specific findings of fact when determining the admissibility of evidence, particularly confessions made by an accused.
Because McCarty brings to our attention an equally compelling reason to reverse his case, we now must address the following issue.

PROPOSITION II

THAT THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SEVER COUNTS IN INDICTMENT AND TRYING THE APPELLANT ON TWO SEPARATE AND DISTINCT CRIMES IN THE SAME TRIAL, ESPECIALLY WHEN STATE WITNESSES TESTIFIED TO APPELLANT'S ALLEGED ORAL CONFESSION OR ADMISSION OF GUILT TO *914 ONLY ONE OF THE COUNTS IN THE INDICTMENT
The appellant was forced to trial on a multi-count indictment charging him with two separate and distinct crimes. Count I charged that on June 17, 1987, the appellant committed the crime of burglary of a dwelling house belonging to Robert Sumlin. Count II charged that on June 19, 1987, the appellant committed the crime of burglary of a dwelling house belonging to Willie Bodie. The appellant made a motion before the trial court to sever the counts in the indictment, but, the court overruled his motion.

DISCUSSION OF LAW
Historically, this court has prohibited multi-count indictments. See, Burney v. State, 515 So.2d 1154, 1156 (Miss. 1987); see also, Brock v. State, 483 So.2d 358 (Miss. 1986); Thomas v. State, 474 So.2d 604 (Miss. 1985); (Ezell) Johnson v. State, 452 So.2d 850 (Miss. 1984); Bennett v. State, 451 So.2d 727 (Miss. 1984); Friday v. State, 462 So.2d 336 (Miss. 1985); Stinson v. State, 443 So.2d 869 (Miss. 1983). This Court had veered away from approving single multiple count indictments because of the possibility of the pyramiding of multiple punishments growing out of the same set of operative facts. Woodward v. State, 533 So.2d 418, 422 (Miss. 1988); see also Thomas, supra.
This was so until the Legislature adopted the following statute:
(1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.
(2) Where two (2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.
(3) When a defendant is convicted of two (2) or more offenses charged in separate counts of an indictment, the court shall impose separate sentences for each such conviction.
(4) The jury or the court, in cases in which the jury is waived, shall return a separate verdict for each count of an indictment drawn under subsection (1) of this section.
(5) Nothing contained in this section shall be construed to prohibit the court from exercising its statutory authority to suspend either the imposition or execution of any sentence or sentences imposed hereunder, nor to prohibit the court from exercising its discretion to impose such sentences to run either concurrently with or consecutively to each other or any other sentence or sentences previously imposed upon the defendant.
Mississippi Code Annotated § 99-7-2 (Supp. 1989). (Effective from and after July 1, 1986). The Legislature adopted this statute as a matter of state policy and although it addressed a matter of practice and procedure in criminal prosecutions this Court accepted and enforced it. Gray v. State, 549 So.2d 1316, 1321 (Miss. 1989); Blanks v. State, 542 So.2d 222, 225 (Miss. 1989); Brown v. State, 534 So.2d 1019, 1021-23 (Miss. 1988); Estes v. State, 533 So.2d 437, 439 (Miss. 1988); and Woodward, 533 So.2d at 421-22, 436-37. But cf. Hall v. State, 539 So.2d 1338 (Miss. 1989) (Court rejected an attempt by the Legislature to enlarge the rules of evidence); Haralson v. State, 308 So.2d 222 (Miss. 1975) (the Court held invalid a statute requiring ten days notice to a court reporter in order to perfect an appeal). Hence, this statute enjoys enforceability, "not because of any legal validity conferred upon them by the legislature, but because we have adopted them in prior proceedings before this Court." McClendon v. State, 539 So.2d 1375, 1377 n. 2 (Miss. 1989).
The five cases cited immediately above are the only cases that have discussed the recently enacted statute. From the language in these cases, it is without question that McCarty's rights were violated when he was tried under this multi-count indictment. For example, in Blanks, the defendant was indicted for murder and aggravated *915 assault. 542 So.2d at 225. This Court held that it was proper to charge the defendant in a single multi-count indictment because the murder and the aggravated assault arose "from a single fusillade, certainly a single transaction, episode or event." Id. (emphasis added). Moreover, practically all the evidence admissible against Blanks on the murder charge was also admissible against him on the assault count and vice versa. Id. The murder in that case occurred from the same gunfire that caused the aggravated assault. Like a typical car chase scene from a television movie, the defendant pulled along side the victims and shot through their window on the passenger side. He then blocked their passage by speeding ahead of them and parking his car across both lanes. When they reached the defendant and before they could turn around, the defendant resumed firing. Id.
In a second case, a grand jury returned a single multi-count indictment against Billy Gunn Brown on charges of sexual battery of a minor child, touching and handling a minor child, contributing to the delinquency of a minor, and contributing to the delinquency of a second minor. Brown, 534 So.2d at 1021. This Court found that the multi-count indictment did not constitute reversible error because the defendant's actions toward the minor victims were part of the same occurrences or scheme. Id. at 1023. The fact that the defendant had offered the girls money to pose nude; insisted that they engage in lesbian relations; provided drugs and alcohol for them; and performed various sexual acts with them constituted evidence of sexual battery. These same acts were relevant to the charges of contributing to the delinquency of a minor, and "[b]ecause the multi-indictments arose from the same transactions or occurrences ... there was no error in allowing trial on the multi-count indictment." Id. (emphasis added)
In Gray, this Court's most recent analysis of § 99-7-2, the defendant was convicted on eight counts of making a phone call with the intent to annoy, abuse, threaten or harass pursuant to MCA § 97-29-45(1)(c) (Supp. 1989). 549 So.2d at 1317. He was charged under a multi-count indictment because he had made one phone call to one party and calls two through eight to a neighbor of the first party. Id. at 1321. We held that the counts in the indictment must be severed because the call in the first count was separate and distinct from the other seven calls. Moreover, the first call involved a separate act or transaction because it involved a different victim, different subject matter, and it occurred two weeks apart from the other series of calls. Furthermore, the differing lengths and content of the conversations during the calls prevented them from being described as a common scheme or plan. However, the series of calls two through eight were properly joined under one indictment, since they "were based on the same act or transaction, and/or were part of a common scheme or plan." Id. at 1323.
The thread that weaves together all of the multi-count indictment cases is that the Court requires a common transaction or occurrence or when the occurrences are at different times then that time period is insignificant. See e.g., Brock, 483 So.2d 358, 362 (kidnapping, robbery and rape counts are amply supported by the evidence and arose out of incidents so closely related in one criminal occurrence that they cannot be extricated one from the other) (Patterson, C.J., specially concurring); Davis v. State, 476 So.2d 608, 609 (Miss. 1985) (evidence relating to two shooting victims admissible in trial on one charge of aggravated assault where both crimes are "interwoven and close in point of time"); and Minor v. State, 482 So.2d 1107, 1110 (Miss. 1986) (two transactions were separated by only twenty minutes, sale was between the exact same parties and sales were intertwined).
The case sub judice can not be defended on the ground of a common transaction or occurrence. First, the burglaries were committed on two different days and at least two days apart. Nothing in the record indicates that there was a plan involved in burglarizing the houses that belonged to different individuals and the houses were miles apart. And, although *916 the trial court found that the burglaries did occur on separate days, he still refused to sever the counts.
Even before the Legislature enacted § 99-7-2, this Court had begun to stray away from its bold stance opposing multi-count indictments.[3]See, Dixon v. State, 465 So.2d 1092; Breckenridge v. State, 472 So.2d 373, 378 (Miss. 1985); see also, Ward v. State, 461 So.2d 724, 726 (Miss. 1984). But, this Court has not been as willing to endorse multi-count indictments resulting from separate crimes. For example, early on Justice Robertson and myself suggested a modification of the rule announced in Stinson and progeny, but we also declared that any modification should be limited to single occurrences. For example, this language appears in Dixon:
I would have the Court adopt a rule to this effect: All charges arising out of the same transaction or occurrence may be lodged in a single multi-count indictment. On the other hand, charges against a defendant arising out of separate transactions or occurrences charged to have taken place at separate times must be brought under separate indictment.
465 So.2d at 1099 (Robertson and Anderson, JJ., specially concurring) (emphasis in the original). This same position was emphasized in Thomas, 474 So.2d at 607:
I wish to emphasize that I in no way endorse the use of a multi-count indictment where the charges against a defendant arise out of separate transactions or occurrences charged to have taken place at separate times.
(Robertson and Anderson, JJ., specially concurring).
There is a great potential for mischief in allowing a multi-count indictment where the charges arise out of separate transactions or occurrences in that the jury may believe that the defendant is charged with so much that he must be guilty of something. Brown, 534 So.2d at 1022 (citing Thomas, 474 So.2d at 607 (Robertson and Anderson, JJ., specially concurring)). The Legislature appears to have been concerned with the same possibilities because § 99-7-2 is plain, "when the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan," a trial on multi-count can be had. Estes v. State, 533 So.2d 437, 439 (Miss. 1988) (emphasis added). Otherwise, the defendant may be prejudiced because his presumption of innocence may be destroyed particularly where evidence of a crime is allowed that would not be mutually admissible in separate trials. Friday v. State, 462 So.2d 336 (Miss. 1985).
The trial judge abused his discretion for this Court has made it crystal clear that proof of another crime is only admissible where "the offense charged and that offered to be proved are so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences." Neal v. State, 451 So.2d 743, 759 (Miss. 1984) (emphasis added); see also Brown, 534 So.2d at 1023.
We disagree with the State. This was not harmless error. McCarty has been sentenced to jail for ten years without the possibility of parole because of an illegally obtained confession and multi-count indictment based on separate crimes. This case is hereby reversed and remanded.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and BLASS, JJ., concur.
PITTMAN, J., not participating.
NOTES
[1] See Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726 (1966); Rule 1.03, Miss.Unif.Crim.R.Cir.Ct.Prac. (1979).
[2] Prior to any questioning, a person must be warned that:

(1) He has the right to remain silent;
(2) Any statement he does make may be used as evidence against him;
(3) He has the right to the presence of an attorney;
(4) If he cannot afford an attorney, the court will appoint one for him;
(5) He may request that the questioning cease at any time; and
(6) He may waive any of these rights.
[3] In Stinson v. State, 443 So.2d 869 (Miss. 1983), this court held that a multi-count indictment is inherently defective. Accord. Bennett v. State, 451 So.2d 727 (Miss. 1984); Johnson v. State, 452 So.2d 850 (Miss. 1984).