IN THE SUPREME COURT OF MISSISSIPPI
NO. 97-KA-01495-SCT

*RANDY APPLEWHITE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/13/1997 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID M. HOLLY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  BILLY L. GORE |
| DISTRICT ATTORNEY: | FRANK CARLTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/06/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 01/27/2000 |

## BEFORE PRATHER, C.J., MILLS AND COBB, JJ.

## COBB, JUSTICE, FOR THE COURT:

¶1. Randy Applewhite comes before this Court on appeal from the Leflore County Circuit Court judgment, based on a jury verdict, which found Applewhite guilty of conspiracy and armed robbery. A sentencing hearing was held on November 13, 1997, and the trial judge sentenced Applewhite to five years in the custody of the Department of Corrections for conspiracy, and 30 years for armed robbery, said sentences to run consecutively. On November 21, 1997, Applewhite filed his notice of appeal to this Court and raises the following issues:

**I. THE TRIAL COURT ERRED BY NOT SUPPRESSING THE STATEMENT OF THE DEFENDANT.**

**II. THE TRIAL COURT IMPROPERLY ALLOWED A CO-CONSPIRATOR'S TESTIMONY CONTAINING HEARSAY STATEMENTS BEFORE PROOF OF THE CONSPIRACY WAS ESTABLISHED.**

Finding no reversible error, we affirm.

## FACTS

¶2. On August 1, 1996, the T and T Grocery located in Leflore County, Mississippi, was the target of an armed robbery by four men, one of whom was Randy Applewhite, according to two eyewitnesses who

were the victims of the robbery. Laurel Powell, a co-owner of the store, and Annie Scott, a part-time employee, said that Applewhite held them at gunpoint and forced them to lie on the floor behind the counter while another man took the money out of the cash register.

¶3. The robbery was investigated primarily by Deputy Sheriff Charlie Cooley of the Leflore County Sheriff's Department. On January 8, 1997, Randy Applewhite was arrested by Deputy Sheriff Annie Buford who read Applewhite his *Miranda* rights after which he requested an attorney.

¶4. Leflore County law enforcement officers testified in a suppression hearing prior to the trial that Applewhite, on January 9, 1997, gave a voluntary oral statement to Investigator Jimmy Tindall and Deputy Cooley admitting his presence at the scene of the robbery. This statement was reduced to writing by Tindall and signed by Applewhite in the presence of Tindall and Cooley.

¶5. Applewhite moved to suppress the statement asserting that it was not voluntarily and freely given. Applewhite claimed that after he requested an attorney, he was subsequently questioned by other members of the Leflore County Sheriff's Department. Applewhite insisted that he refused to give a statement until he was threatened and coerced by the officers to do so. Applewhite testified that he gave the statement "because I was scared and they kept threatening me and telling me they were [going to] give me life in prison . . ." The trial court denied Applewhite's motion to suppress and allowed the prosecution to introduce the statement at trial.

¶6. During the State's case-in-chief, the State called five witnesses including Laurel Powell, Annie Scott, and Jasper Earl Thomas, a co-conspirator who turned State's evidence. The other two witnesses testifying for the State were Investigator Tindall and Deputy Cooley through whom Applewhite's statement was admitted into evidence over Applewhite's objection.

¶7. At the close of the State's case-in-chief, Applewhite's motion for a directed verdict was denied. Applewhite testified in his own behalf and called three witnesses who supported his alibi defense: Bo Applewhite, his grandfather; Bonnie Swims, his mother; and Felecia Randle, his girlfriend. The State then produced two rebuttal witnesses, Timothy Williams and Jesse Taylor.

¶8. The jury deliberated for 15 minutes and returned a unanimous verdict of guilty against Applewhite on both the conspiracy and armed robbery charges. The trial judge sentenced Applewhite to five years for conspiracy and 30 years for armed robbery, said sentences to run concurrently. Taking exception with the proceedings below, Applewhite now appeals to this Court.

## DISCUSSION

### I. THE TRIAL COURT ERRED BY NOT SUPPRESSING THE STATEMENT OF THE DEFENDANT.

¶9. In his first argument, Applewhite's contends that the trial judge erred in allowing the statement Applewhite gave to Investigator Tindall and Deputy Cooley to be presented to the jury. Applewhite claims that the statement was elicited in violation of his Fifth Amendment right to counsel and was not voluntarily given.

¶10. When the findings of a trial judge regarding the voluntariness of a defendant's confession are called into question, this Court employs the standard of review recited in *McCarty v. State*, 554 So. 2d 909 (Miss.

1989). In *McCarty*, we held that when a trial judge "determines that a confession is admissible, his finding becomes a finding of fact which will not be reversed on appeal unless it is manifestly in error or contrary to the overwhelming weight of the evidence." *McCarty*, 554 So. 2d at 912 (quoting *Pinkney v. State*, 538 So. 2d 329, 342 (Miss. 1988)). Further, we found in *Sills v. State*, 634 So. 2d 124, 126 (Miss. 1994) (quoting *Frost v. State*, 483 So. 2d 1345, 1350 (Miss. 1986)), that "[o]nce the trial judge has determined, at a preliminary hearing, that a confession is admissible, the defendant/appellant has a heavy burden in attempting to reverse that decision on appeal." There is nothing in the record indicating manifest error in the trial judge's finding that Applewhite's statement was voluntarily and freely given.

¶11. Between January 8, 1997 at 7:22 p.m. and January 9, 1997 at 1:07 p.m., Applewhite was read his *Miranda* rights on three separate occasions, but the State claims that Applewhite was not interrogated, coerced, or threatened to give a statement at any time. On the third occasion, Applewhite offered an oral statement to Tindall who transcribed it into his own handwriting. Applewhite then signed the statement and a waiver of rights form.

¶12. During the suppression hearing, Investigator Tindall was asked by the State whether the statement he took from Applewhite was the result of threats or coercion:

> Q: Did you coerce him in any manner to give you a statement?
>
> A: No.
>
> Q: Did you threaten him in any manner - -
>
> A: No.
>
> Q: - - to give you a statement? Did you intimidate him at all, Deputy Tindall, in order to give you a statement?
>
> A: No.

¶13. Later, during the same suppression hearing, Applewhite was called to testify in his own defense. When the defense attorney asked Applewhite if he had been coerced into giving the statement to Investigator Tindall, Applewhite responded as follows:

> Q: Did Mr. Tindall at any point in time threaten you?
>
> A: Yes, sir.
>
> Q: What'd he say?
>
> A: He told me I can get lift (sic) in prison for, you know, robbing the store.
>
> Q: Right.
>
> A. And he told me I ain't never going to see my folks no more unless I sign that paper. They were trying to make a deal with me.

¶14. Applewhite agreed that the portion of his statement regarding his presence at the T and T Grocery on the evening of August 1, 1996, was true, but Applewhite denied giving the part of the statement where he

admitted being present when the armed robbery occurred.

¶15. Following testimony by both sides, the trial judge ruled as follows:

> THE COURT: Looking at all of the facts, the credible evidence is that the defendant was not questioned the night that he was arrested and placed in jail. The fact that he equivocates at one point and says that some parts of the statement are true and some parts are not true, yet he turns around and says it's all involuntarily given just doesn't make any sense. And I find from all of the facts surrounding the interrogation of the defendant that the statement was freely and voluntarily given, and its admissible.

¶16. The circuit judge did not run afoul of this Court's above-mentioned standard. In the face of conflicting testimony, the court below made a finding which is supported by credible evidence in the record and is not manifestly erroneous. As a result, Applewhite's statement was properly admitted into evidence.

## II. THE TRIAL COURT IMPROPERLY ALLOWED A CO-CONSPIRATOR'S TESTIMONY CONTAINING HEARSAY STATEMENTS BEFORE PROOF OF THE CONSPIRACY WAS ESTABLISHED.

¶17. Applewhite next contends that the trial court erred in admitting into evidence testimony from Jasper Earl Thomas, a co-conspirator, who testified about statements made by the other conspirators. Applewhite argues that a conspiracy had not yet been proven when Thomas testified. The State's first two witnesses were the victims, Powell and Scott. Powell testified that four young men had twice entered the T & T store earlier in the evening of August 1, 1996, and later three of them came in while one stood outside at the door, and Applewhite and Jones pulled guns on her and Ms. Scott and took money and food stamps from the cash register. Scott's testimony was substantially the same as that of Powell. The State then called Officer Cooley, who testified regarding his involvement in the investigation and arrest. Officer Cooley stated he was present when Applewhite gave his statement regarding the robbery, and he identified Applewhite's statement. Officer Tindall was then called by the State, and through him Applewhite's statement was introduced into evidence and read to the jury. Only after those four witnesses testified was co-conspirator Jasper Earl Thomas put on the stand to testify about the conspiracy. The testimony of these witnesses, along with Applewhite's statement, regarding the actions of the four men on the night of the robbery, sufficiently established a conspiracy. Jasper Earl Thomas was indicted as a co-conspirator in this matter along with Randy Applewhite, Patrick Lamar Davis, and Kelvin Jones. Prior to trial, Thomas gave a statement to the Leflore County Sheriff's Department that contained statements of all co-conspirators.

¶18. Miss. Code Ann. § 97-1-1 (1994) states in part that the crime of conspiracy is committed when two or more persons conspire to commit a crime or accomplish any unlawful purpose. A conspiracy "is a combination of two or more persons agreeing to accomplish an unlawful purpose or agreeing to accomplish a lawful purpose unlawfully. *Clayton v. State*, 582 So. 2d 1019, 1022 (Miss. 1991); *Griffin v. State*, 480 So. 2d 1124, 1126 (Miss. 1985). Further in *Watson v. State*, 722 So. 2d 475, 478 (Miss. 1998), this Court noted that:

> The conspiracy agreement need not be formal or express, but may be inferred from the circumstances, particularly by declarations, acts and conduct of the alleged conspirators. Furthermore, the existence of a conspiracy, and a defendant's membership in it, may be proved entirely by circumstantial evidence.

¶19. Applewhite's statement, combined with the testimony of the victims, sufficiently established the existence of a conspiracy between Applewhite and the other men to rob the T and T Grocery. Therefore, the trial judge did not err in allowing co-conspirator Jasper Thomas to testify regarding statements made by Applewhite.

## CONCLUSION

¶20. The trial court below was not in error when it allowed Applewhite's statement to be admitted into evidence. The record supports the trial judge's finding that Applewhite voluntarily gave the statement and that he was not threatened or coerced to do so. Additionally, the trial judge properly allowed co-conspirator Jasper Earl Thomas to testify as to statements made by Applewhite as there was ample evidence to support the existence of a conspiracy among the four men to rob the T and T Grocery. Thus, judgment of the Leflore County Circuit Court is affirmed.

¶21. **COUNT I: CONVICTION OF CONSPIRACY AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT II: CONVICTION OF ARMED ROBBERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT I.**

**PRATHER, C.J., PITTMAN, P.J., SMITH, MILLS AND WALLER, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND McRAE, J.**

**BANKS, JUSTICE, DISSENTING:**

¶22. Because in my view the circuit court erroneously based its conclusion that the statement was voluntarily given upon what it viewed as the "truthfulness" of the statement, I respectfully dissent. I would reverse the judgment and remand this case to that court for a new trial.

¶23. In considering whether the statement that Applewhite sought to suppress was given voluntarily, the trial court observed:

> Looking at all of the facts, the credible evidence is that the defendant was not questioned the night that he was arrested and placed in jail. The fact that he equivocates at one point and says that some parts of the statement are true and some parts are not true, yet he turns around and says it's all involuntarily given just doesn't -- that doesn't make any sense. And I find from all of the facts surrounding the interrogation of the defendant that the statement was freely and voluntarily given, and it's admissible.

¶24. This is clearly erroneous. Statements given involuntarily can be completely "truthful," completely "untruthful," or mixed. The result is the same. Involuntary statements may not be used. The United States Supreme Court has made it clear that an involuntary or coerced statement, regardless of its alleged truth, is not admissible. *See, e.g.*, *__Michigan v. Tucker__, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974); __Johnson v. New Jersey,__ 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966)*; *__Miranda v. Arizona__, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)*; *__Rogers v. Richmond__, 365 U.S. 534, 81 S.Ct.*

[735, 5 L.Ed.2d 760 (1961)](#).

¶25. Therefore, the trial court erred when it considered truthfulness as one of the indicia of voluntariness. Because this erroneous factor was considered by the trial court, I would reverse and remand for a new trial.

## SULLIVAN, P.J., AND McRAE, J., JOIN THIS OPINION.