IRVING, J.,
for the Court:
¶ 1. Robbie Sistrunk was convicted of the offense of prescription forgery and sentenced to a term of two and one-half years in the Mississippi Department of Corrections. He has appealed and contends that the trial court erred in allowing into evidence a statement given by him to the police. He contends that the statement was obtained under duress in violation of his rights under the Fifth and Sixth Amendments. We are not persuaded by Sistrunk’s arguments and affirm his conviction and sentence.
FACTS
¶ 2. On October 3,1998, a prescription, dated October 1, 1998, for Lorcet plus, a painkiller and Schedule II controlled substance, and for Xanax, a tranquilizer and Schedule IV controlled substance, was presented by Robbie Sistrunk to the Wal-Mhrt Pharmacy in Philadelphia, Mississip *420 pi. The name of the patient for whom these medications were allegedly prescribed was “Mark Taylor.” The origin of the prescription appeared to be the Forest Family Practice Clinic located in Forest, and the physician’s signature was purported to be that of W.M. Lewis, M.D.
¶ 3. Jennifer Pierce, a Wal-Mart pharmacist familiar with both the habits and handwriting of Dr. Lewis, reported what she believed to be a discrepancy on the prescription to her manager, Don McKay. McKay, in turn, contacted Dr. Lewis and learned that Lewis did not write the prescription. ' Law enforcement authorities were notified. Tommy Waddell, Chief Investigator for the Philadelphia Police Department, responded to the call. Waddell instructed the pharmacy to fill the prescription. He then waited for someone to show up to pick up the medication. No one showed up to claim the medicine that day.
¶ 4. The next week, an individual contacted the pharmacy by telephone asking if the prescription had been filled. A short time later, Sistrunk’s niece, a teenager, paid for the prescription and picked up the medication. She was intercepted by Officer Waddell who was present inside the store observing the transaction. The girl told Waddell that her uncle, Robbie Sis-trunk, had given her the money for the prescription and that he was outside in the parking lot waiting inside a car. After walking right past Sistrunk sitting on a bench inside the store, and leading Wad-dell on a futile search of the parking lot, she began to cry and confessed to Waddell that her uncle was still inside Wal-Mart.
¶ 5. Waddell located Sistrunk sitting on a bench inside the store near an exit. Waddell testified that when he advised Sistrunk that there was a problem with the prescription, Sistrunk became very, very nervous. Sistrunk was taken into custody and transported to the police station in Philadelphia where, after being advised of his Miranda rights, he signed a waiver of those rights in the presence of Officer Waddell and gave the following statement, the content of which was reduced to writing by Waddell and signed by Sistrunk in Waddell’s presence:
The weekend before, on Friday afternoon I don’t know what time, [b]ut I found a prescription with Mark Taylor [sic] name on it. But I can’t think where I found it. But I notic[e] that it had Xanax which I take and I brought it to Wal-Mart and tried to get the medication. I waited a while and they never paged me to pick it up so I left. [T]oday I call [sic] Wal-mart to see if it was ready and they said yes. So we came to Phila. And I sent my niece Cathy Lee in to pick up the prescription. Mark Taylor I do not know, /s/ Robbie Sis-trunk.
The statement was signed by Sistrunk after he had read the statement and had acknowledged its truthfulness in the presence of Waddell.
¶ 6. Sistrunk filed a pretrial motion to suppress the statement on the ground that he was having an anxiety attack at the time of the interrogation and that Officer Waddell withheld his anti-anxiety medication until after he had signed the statement. Sistrunk testified during the suppression hearing that he had been prescribed medication and was seeing a psychiatrist on a regular basis for “panic attacks, agoraphobia, and schizophrenic [sic], stuff like that.” No physician was produced, either during the suppression hearing or at trial, attesting to the fact that Sistrunk suffered from these various maladies or that he was presently taking medications such as Xanax for these conditions. Furthermore, there was no testimony from Sistrunk or anyone else that Waddell withheld Sistrunk’s medication until he confessed to the crime.
¶ 7. Sistrunk also claimed that Waddell told him that both he and his niece could be going to jail. Waddell denied during his rebuttal testimony that he ever men *421 tioned anything about the niece going to jail.
ANALYSIS OF ISSUE PRESENTED
¶ 8. Sistrunk concedes that his claim of having been forced into a confession by the withholding of medication is a case of first impression. He insists that his statement is as much the product of coercion and threats as if he had been told to confess or he would spend the rest of his life in jail. He claims that he did not have the capacity at that time to think rationally.
¶ 9. In Abram v. State, 606 So.2d 1015, 1031 (Miss.1992), the Mississippi Supreme Court set out the standard of review on voluntariness of confessions. The court held as follows:
This point generally presents a fact question which is to be resolved by the trial judge according to the correct legal standards. In making this determination, the trial judge must absolutely resist any inclination to consider whether the confession is truthful or authentic; the focus must be limited to the voluntariness of the confession. Powell [v. State], 540 So.2d [13] at 15[ (Miss.1989)]. Once the trial judge has determined the confession to be voluntary, this court will only reverse if convinced that such a finding is manifestly wrong and/or against the overwhelming weight of the evidence, except that our scope of review is less constrained where detailed and specific findings by the trial court are lacking on the critical issue(s). McCarty v. State, 554 So.2d 909, 912 (Miss.1989); Chisolm[ v. State], 529 So.2d [630] at 634[ (Miss.1988)].
¶ 10. The lower court in the case at bar made very specific findings of fact that the waiver of rights form signed by Sistrunk prior to his statement was in proper form and in accordance with the law. It further found that Sistrunk understood his rights and, with knowledge of his rights, waived them knowingly and made a statement wherein he made an admission of guilt. After a careful review of the record, this Court is not convinced that those findings are manifestly wrong and/or against the overwhelming weight of the evidence; consequently, the lower court’s ruling is affirmed.
¶11. THE JUDGMENT OF THE CIRCUIT COURT OF NESHOBA COUNTY OF CONVICTION OF PRESCRIPTION FORGERY AND SENTENCE TO SERVE A TERM OF TWO AND ONE-HALF YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAY A FINE OF $1,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHOBA COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, MYERS, PAYNE, and THOMAS, JJ., concur.