# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-KA-00238-SCT

*PERRY ARMSTEAD*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/25/2007 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: BRENDA JACKSON PATTERSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/03/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., CARLSON AND LAMAR, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Perry Armstead was tried and convicted in the Oktibbeha County Circuit Court on one count of sale or transfer of cocaine and one count of possession of cocaine. Armstead was sentenced to fourteen years for the sale of cocaine and three years for possession of cocaine, with the sentences to run consecutively. We affirm.

## FACTS

¶2.     On the morning of March 16, 2006, Tretis Anderson, an agent with the Mississippi

Bureau of Narcotics (MBN), and Maurice Johnson, a sergeant with the Starkville Police

Department, solicited Cynthia Hamilton, a confidential informant, to purchase forty dollars'

worth of crack cocaine from Armstead.  At the pre-buy meeting at Hamilton's home, Agent

Anderson and Officer Johnson searched Hamilton's person; wired her with a camera and tape

recorder; gave her forty dollars;[1] and listed the serial numbers on each of the bills.

¶3.     Hamilton called Armstead and told him that she wanted to buy forty dollars' worth

of crack cocaine.  Hamilton and Officer Johnson recognized Armstead's voice on the phone

based on their prior encounters with him.  Agent Anderson and Officer Johnson then drove

Hamilton down the street and dropped her off so that she could walk to Armstead's home.[2]

As Hamilton approached Armstead's door, a voice over the home's intercom system[3] told

her to "hold on."  Hamilton and Officer Johnson identified the voice as Armstead's.  Shortly

thereafter, Jaquette Miller[4] came to the door, handed Hamilton the cocaine, and took the forty

dollars.  Hamilton returned to the vehicle and told Agent Anderson and Officer Johnson that

---

[1]  Hamilton thought that she had been given a twenty, two fives, and ten ones. Anderson, on the other hand, thought that she had been given a twenty, a ten, a five, and five ones.

[2]  Hamilton's home was only about ten to fifteen minutes' walking distance from Armstead's home.

[3]  Armstead had an audio and video surveillance system at his home, including a monitor inside his bedroom.  However, it is not clear whether the video was working on the morning of the sale.

[4]  Hamilton and Officer Johnson identified Miller as a "runner."  According to Officer Johnson, drug dealers frequently use runners in order to avoid appearing on surveillance videos themselves.

Armstead was not there yet. At trial, Hamilton explained her statement to mean that Armstead, himself, had not served her.

¶4. Following the sale, Agent Anderson, Officer Johnson, and Hamilton returned to Hamilton's home. Hamilton called Armstead's cell phone, but no one answered. When Armstead called back, Hamilton told him "that's how I like being served," and said that she would be back for more.

¶5. Agent Anderson and Officer Johnson used the sale as a basis for obtaining a search warrant for Armstead's home. At about 7:30 p.m. that same evening, MBN, the Starkville Police Department, and the Okitibbeha County Sheriff's Department executed the search warrant. Officers located Armstead in his bedroom, just as he was walking out of an adjacent bathroom. In this bathroom, officers found twenty-three dollars (a twenty and three ones), the serial numbers of which matched the bills used in the earlier sale to Hamilton.[5] Narcotics were also found in the home, including a small amount of cocaine in a black film canister in the kitchen cabinet.

¶6. After the home was secured, the males were taken to the carport area and the females were taken into the living room.[6] Armstead gave a statement that the drugs belonged to him.

¶7. Armstead was indicted on nine counts. The State agreed to sever all the counts and prosecute Armstead only on count seven, the sale or transfer of cocaine, and count eight,

---

[5] A total of $1,163 was found in the home, including $132 found on Armstead's person.

[6] A total of seven people, including Armstead, were at the home at the time of the search.

possession of cocaine.[7]  Armstead filed a motion to sever counts seven and eight as well, which the trial court denied.  For trial purposes, counts seven and eight were styled as counts A and B, respectively.

¶8.  The jury found Armstead guilty on counts A and B.  For the sale of cocaine in count A, Armstead was sentenced to fourteen years in the custody of the Mississippi Department of Corrections and fined $5,000.  For possession of cocaine in count B, Armstead was sentenced to three years in the custody of the Mississippi Department of Corrections, to be served consecutively with the sentence in count A.

¶9.  Armstead filed a motion for new trial or, in the alternative, a judgment notwithstanding the verdict, which the trial court denied on February 2, 2007.

¶10.  On appeal, Armstead raises two issues: (I) whether Armstead was informed of his *Miranda* rights,[8] and if so, whether he made a knowing, intelligent, and voluntary waiver of such rights; and (II) whether Armstead's conviction for the sale of cocaine in count A should be reversed due to the prejudice caused by the admission of Armstead's confession in count B.

**DISCUSSION**

I.     **Whether Armstead was informed of his *Miranda* rights, and if so, whether he made a knowing, intelligent, and voluntary waiver of such rights.**

---

[7]  A *nolle prose* was entered on count nine, for possession of marijuana, based on Armstead's guilty plea to that charge.

[8]  "In *Miranda*, the United States Supreme Court held that the Fifth and Fourteenth Amendments' prohibitions against compelled self-incrimination require that, prior to custodial interrogation, the accused must be advised of his right to remain silent and his right to counsel."  *Chim v. State*, 972 So. 2d 601, 603 (Miss. 2008) (citing *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)).

¶11. The State must prove beyond a reasonable doubt all facts prerequisite to the admissibility of a confession. *McCarty v. State*, 554 So. 2d 909, 911 (Miss. 1989) (citing *Gavin v. State*, 473 So.2d 952, 954 (Miss. 1985)). As the trier of fact, the trial judge must first determine whether the defendant was advised of his *Miranda* rights. *Chim*, 972 So. 2d at 603 (citing *Baldwin v. State*, 757 So. 2d 227, 234 (Miss. 2000)). The trial judge must then ascertain, based on the totality of the circumstances, whether "the defendant's statement was freely and voluntarily given, and was not the result of force, threat, or intimidation." *Baldwin*, 757 So. 2d at 235 (citing *Smith v. State*, 737 So. 2d 377, 382 (Miss. Ct. App. 1999)). If the statement is admitted, this Court will not reverse so long as the finding is based on appropriate principles of law and supported by substantial evidence. *Chim*, 972 So. 2d at 604 (citing *Holland v. State*, 587 So. 2d 848, 860 (Miss. 1991)).

¶12. Armstead filed a pre-trial motion to suppress his statement that the drugs in the house belonged to him. At a hearing conducted outside the presence of the jury, testifying officers gave contradictory testimony regarding the circumstances surrounding Armstead's statement.

¶13. Eddie Hawkins, an agent with MBN at that time, testified that he read Armstead his rights after Armstead had been brought outside under the carport. Armstead indicated that he understood his rights and had no further questions. According to Agent Hawkins, a short time later, Officer Johnson walked outside and told other officers about the marijuana and cocaine that had been found inside the house. Armstead then made a statement that everything in the house belonged to him and that no one else at the house, including his wife, had anything do with it. Agent Hawkins said that Officer Johnson did not specifically

question Armstead, but that Armstead responded spontaneously to Officer Johnson's general statement about drugs being found in the house.

¶14.    Officer Johnson testified that he heard Agent Hawkins advise Armstead of his rights. Officer Johnson stated that, "I asked [Armstead] whether or not his wife had anything to do with anything inside the house, and that's when [Armstead] made the comment about the house being in his name and that it was his house and everything in the house belonged to him." Officer Johnson said that neither he nor any other officer threatened to arrest anyone, and that Armstead never requested an attorney or expressed a desire to remain silent.

¶15.    Clay Moore with the Starkville Police Department testified that he had been going back and forth from the carport area and could not recall having heard anyone read Armstead his rights. Officer Moore said that he overheard the conversation between Officer Johnson and Armstead. According to Officer Moore, Armstead initially denied, but then admitted that the drugs were his and that he'd been a user for years. Officer Moore stated, "I did hear [Officer Johnson] make a comment about [Armstead's] wife, you know, that his wife could possibly being [sic] charged as well with the dope. And then Mr. Armstead made the comment that, you know, no, you know, this is my dope, you know . . . ."

¶16.    Agent Anderson was also called to testify, but he could not recall any conversations that Officer Johnson or Agent Hawkins had with Armstead.

¶17.    The trial court ruled Armstead's statement to be admissible. The trial court found that Armstead's statements had not been procured through custodial interrogation, but were in response to an on-scene question by a law enforcement officer after Armstead had been read

6

his *Miranda* rights.[9]  Additionally, the trial court found that Officer Johnson's statement did not rise to the level of threat or intimidation that would warrant suppression of the statement.

¶18.    Armstead first argues that the admission of his statement is subject to a heightened standard of review because the trial court failed to make specific findings of fact.  This argument is without merit because the trial court did make specific findings of fact in ruling Armstead's statements to be admissible.  The trial judge stated, in pertinent part, that:

> [Armstead], in the Court's opinion, was fully advised of his constitutional rights.  He responded to an on-scene question by a law enforcement officer after being advised of his constitutional rights.  And the Court does not feel

---

[9]  While not raised as an assignment of error, we note that the trial court implied that *Miranda* was not required under the circumstances.  The trial judge specifically stated "[t]he questioning of [Armstead] by the officer was on scene while the search was being conducted. It was *not a custodial interrogation* away from the scene at a police station or in an interview."  (Emphasis added).

*Miranda* does not apply in "'a non-custodial setting where interrogation is investigatory in nature (general on-the-scene-investigation) . . . .'" *Hopkins v. State*, 799 So. 2d 874, 878 (Miss. 2001) (quoting *Porter v. State*, 616 So. 2d 899, 907 (Miss. 1993)). The test for whether a person is in custody is whether a reasonable person, based on the totality of the circumstances, would feel that he was in custody, *i.e.* that he was going to jail and not just being temporarily detained.  *Hunt v. State*, 687 So. 2d 1154, 1160 (Miss. 1996) (citing *Compton v. State*, 460 So. 2d 847, 849 (Miss. 1984)).  Factors to consider include "the place and time of the interrogation, the people present, the amount of force or physical restraint used by the officers, the length and form of the questions, whether the defendant comes to the authorities voluntarily, and what the defendant is told about the situation." *Hopkins*, 799 So. 2d at 878 (citing *Hunt*, 687 So. 2d at 1160).

Armstead was handcuffed and questioned under his carport soon after law enforcement officers had executed the search warrant.  While various law enforcement officers were going in and out of the house, at least four officers were in the vicinity where Armstead was being questioned.  Officer Johnson placed a copy of the search warrant in a chair next to Armstead so that he could read it and be aware of the situation.

Based on the totality of the circumstances, we find that Armstead was subjected to a custodial interrogation and, therefore, *Miranda* was required.  Nevertheless, this issue is of no consequence, because the trial court found that Armstead had been read his *Miranda* rights.

7

that the statement by the officer in any way rises to the level of any threat, intimidation that would warrant the suppression of the statement by [Armstead] to the officers.

¶19. Therefore, a heightened standard of review is not required.

¶20. Second, Armstead argues that he was not advised of his *Miranda* rights prior to questioning. Armstead contends that Officer Johnson did not actually witness or hear Agent Hawkins read Armstead his rights, but merely relied on Agent Hawkins's past practice of reading individuals their rights. Regardless, Armstead argues that he should have been given new *Miranda* warnings prior to Officer Johnson's questioning.

¶21. Agent Hawkins testified that after the residence had been secured, he "read [Armstead] his rights and made sure that [Armstead] fully understood what his rights were." Officer Johnson stated unequivocally that he overheard Agent Hawkins read Armstead his *Miranda* rights, although he could not remember specifically where this had taken place. While Officer Johnson referenced Agent Hawkins's standard procedure of reading people their rights, this was not the basis for Officer Johnson's testimony.

¶22. Armstead submits that this case is analogous to *McCarty v. State*, 554 So. 2d 909 (Miss. 1989). In *McCarty*, the defendant was read his *Miranda* rights during his first interrogation, but not during his third interrogation, some three-and-a-half-to-four hours later, in which he made incriminating statements. *McCarty*, 554 So. 2d at 911-13. This Court held that the defendant had not been adequately warned of his rights against self-incrimination. *Id*. at 913.

¶23. The subject case is distinguishable from *McCarty* in that only one interrogation occurred—there were not multiple interrogation sessions. *See Ford v. State*, 555 So. 2d 691,

8

697 (Miss. 1989). Additionally, only a short time transpired between the time that Agent Hawkins read Armstead his *Miranda* rights and Officer Johnson's questioning. *See Johnson v. State*, 475 So. 2d 1136, 1144-45 (Miss. 1985).

¶24. Thus, we find that there is substantial evidence to support the trial court's finding that Armstead was adequately advised of his constitutional rights under *Miranda*.

¶25. Finally, Armstead argues that the State failed to prove beyond a reasonable doubt that he voluntarily and knowingly waived his privilege against self-incrimination. Armstead asserts that his statements were coerced by Officer Johnson's threat to arrest Armstead's wife if Armstead did not confess that the drugs belonged to him.

¶26. Threats to arrest a defendant's family member(s) do not render a confession involuntary so long as probable cause exists to arrest such persons. *Allen v. McCotter*, 804 F.2d 1362, 1364 (5th Cir. 1986) (citing *United States v. Diaz*, 733 F.2d 371, 374-75 (5th Cir. 1984) (noting that a high standard of good faith is required in the use of such techniques)).

¶27. We find that probable cause existed to arrest Armstead's wife. Cocaine was found in the kitchen, a common area of the home. Armstead's wife had been living in the home and was listed on the lease. "A presumption of constructive possession arises against the owner of premises upon which contraband is found." *Smith v. State*, 839 So. 2d 489, 497 (Miss. 2003) (citing *Hamm v. State*, 735 So. 2d 1025, 1029 (Miss. 1999)). Accordingly, we find Officer Johnson's statements insufficient to render Armstead's statement involuntary.

¶28. In sum, the trial court's ruling that Armstead was read *Miranda* rights, and that he made a knowing, intelligent, and voluntary waiver of such rights, is in accordance with the correct principles of law and is supported by substantial evidence. The fact that Armstead

9

gave no written, signed, waiver of rights is of no consequence. ***Davis v. State***, 320 So. 2d 789, 790 (Miss. 1975).

**II. Whether Armstead's conviction for the sale of cocaine in count A should be reversed due to the prejudice caused by the admission of Armstead's confession in count B.**

¶29. Armstead argues that he was materially prejudiced in his right to a fair trial on the sale-of-cocaine charge in count A because his confession in count B would not have been admissible at a trial on count A alone.

¶30. For support, Armstead relies on ***Bennet v. State***, 451 So. 2d 727 (Miss. 1984). However, the Court of Appeals has pointed out that ***Bennet*** was decided prior to the enactment of Mississippi Code Annotated Section 99-7-2, which permits the prosecution of more than one charge in the same trial where "(a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan." ***Wright v. State***, 797 So. 2d 1028, 1030 (Miss. Ct. App. 2001) (quoting Miss. Code Ann. § 99-7-2 (Rev. 2007)); *see also* Uniform Rules of Circuit and County Court Practice Rule 7.07.

¶31. There is no authority for restricting the multi-count-indictment statute because some element of proof necessary as to one charge would be inadmissible on another charge if tried separately.[10] ***Wright***, 797 So. 2d at 1030. Whenever a defendant is tried on a multi-count indictment, the possibility that a jury will infer guilt on all counts from guilt on one

---

[10] As noted by the Court of Appeals, "[i]t is, in fact, difficult to envision a trial of multiple charges where some evidence relevant to one charge would not be subject to a Rule 404(b) challenge as to the other charge, no matter how closely related in time and circumstance the two alleged crimes might be." ***Wright***, 797 So. 2d at 1030.

individual count does not warrant reversal so long as the jury is instructed that each count must be considered separately, and each count is supported by substantial evidence and proven beyond a reasonable doubt. *United States v. Meriwether*, 486 F.2d 498, 504 (5th Cir. 1973).

¶32.    In this case, the jury was instructed that each count should be considered separately. Furthermore, substantial evidence supports Armstead's conviction on count A for the sale of cocaine.  Accordingly, we find that Armstead's conviction on count A should not be reversed.

## CONCLUSION

¶33.    We find that the trial court's admission of Armstead's confession was in accordance with the correct principles of law and was supported by substantial evidence.  Additionally, Armstead's confession as to count B did not materially prejudice his right to a fair trial on count A, because the jury was instructed to consider each count separately and substantial evidence supports Armstead's conviction on count A.  Therefore, we affirm Armstead's conviction.

¶34. **COUNT I:  CONVICTION OF SALE OF COCAINE AND SENTENCE OF FOURTEEN (14) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND PAYMENT OF A FINE OF $5,000.00, AFFIRMED.  SAID SENTENCE SHALL RUN CONSECUTIVELY WITH THE SENTENCE IMPOSED IN COUNT II. COUNT II: CONVICTION OF POSSESSION OF COCAINE AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  SAID SENTENCE SHALL RUN CONSECUTIVELY WITH THE SENTENCE IMPOSED IN COUNT I.**

**SMITH, C.J., DIAZ, P.J., EASLEY, CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.  GRAVES, J., CONCURS IN RESULT ONLY.**